Mills v. Davison.

ALFRED MILLS, appellant,

v.

William Davison and the Rector, Wardens and Vestrymen of Grace Church, in Westfield, N. J., respondents.

1. The rule against perpetuities does not apply to gifts to charitable uses. A gift to a charitable use, with a direction that no part thereof should at any time be alienated, does not create a perpetuity in the sense forbidden by law but only a perpetuity allowed by law and equity in cases of charitable trusts.

2. A conveyance of a lot of land on which an Episcopal church had been erected by voluntary contributions, was made for a nominal consideration, and was, therefore, a gift by which the lot was conveyed to a religious society incorporated as a Protestant Episcopal church and to their successors, "but not to their assigns," with an *habendum* in these words: "To have and to hold unto the said party of the second part and their successors forever, with this express condition and limitation: that neither the said party of the second part nor their successors shall at any time sell, mortgage or in any way convey the said lands and premises or any part thereof, and that no building shall be kept, maintained or erected thereon, except for the purpose of public worship and teaching in accordance with the usages, rites and ceremonies of the Protestant Episcopal Church in the United States of America, and also except the proper outbuildings appurtenant thereto."—*Held*, that the grant was of the entire estate to hold to the use exclusively for public worship and teaching in conformity with the usages, rites and ceremonies of the Protestant Episcopal Church.

3. A conveyance in the form above set out does not create a condition for the breach of which the grantor may enter as for a forfeiture of the estate, but

Mills v. Davison.

creates a trust which the grantee taking the legal estate is bound to perform; to be enforced not by a forfeiture of the title, but by those methods by which a court of equity compels the performance of such trusts.

4. The grant being to a religious society incorporated as a Protestant Episcopal church, the object for which the donee was incorporated is an important element in the construction of the instrument by which a charity is created.

5. The deed of conveyance contained a consent by the grantors that the grantee might, by a mortgage on the property, raise a certain sum of money for the purpose of completing the church edifice.—*Held*, that such consent did not destroy the entire trust, but had the effect only to validate the mortgage, and that upon a sale in foreclosure proceedings, the surplus money which remained after payment of the mortgage debt, interest and costs, belonged to the grantee to be held upon the original trust.

6. The donor, as the founder of a charity, has a standing in court to restrain the diversion of the property donated from the charitable uses for which it was given.

On appeal from an order of the chancellor striking out the cross-bill of the defendant, Alfred Mills. Opinion reported in *Mutual Benefit Life Insurance Co.* v. *Grace Church, 8 Dick. Ch. Rep. 413.*

*Mr. Alfred Mills, pro se.*

*Mr. Craig A. Marsh,* for the respondents.

The opinion of the court was delivered by

DEPUE, J.

The rector, wardens and vestrymen of Grace Church, in Westfield, were incorporated as a religious society by a certificate filed November 20th, 1862, pursuant to the act to incorporate religious societies. *Rev. p. 962 § 27.* During the years 1874 and 1875, the corporation erected a church building on a lot of land in Westfield, owned by Alfred Mills and Catherine, his wife. The building was erected and used for the purpose of public worship and teaching, in accordance with the usages, rites and ceremonies of the Protestant Episcopal Church in the United States of America. The cost of erecting and furnishing

the building was about $6,500.   Of this sum, Mr. Mills and his
wife gave $2,900.   To raise the money necessary to complete
the building, after other voluntary contributions were applied,
the sum of $2,000 was borrowed of the Mutual Benefit Life
Insurance Company.   To enable the society to raise this money
on mortgage, Mr. and Mrs. Mills made conveyance to the
society by a deed made and executed on the 14th of June,
1875.   On the same day, the society, in its corporate name, made
and executed a mortgage on the lot so conveyed to it to the in-
surance company for the said sum of $2,000.   The mortgage is
now being foreclosed.   On the 30th of April, 1894, William
Davison recovered a judgment against the society, in its corpo-
rate name, for the sum of $1,554.07.   This debt was not in any
way connected with the building of the church edifice.   Mrs.
Mills died before the filing of the bill in this case, and her title
to the premises, whatever it is, became vested in her husband,
Alfred Mills, and her son, Edward, who were made parties to
the foreclosure suit.   Davison, as a judgment creditor, was made
a party by his petition.

The controversy is over the surplus money that may remain
after paying the mortgage debt.   Davison, by his answer, claims
that such surplus should be applied to the payment of his judg-
ment.   Alfred Mills has answered, and in his answer denies that
the Davison judgment is a lien on the mortgaged premises, and,
by way of a cross-bill, claims that the surplus of the proceeds of
the sale of the mortgaged premises should be paid to him and
his son.   The church society has also answered, consenting to a
sale of the mortgaged premises, and submitting to the determina-
tion of the court the question of the application of the surplus
of the money realized from the sale after payment of the mort-
gage debt, interest and costs.

On the motion of Davison, the chancellor made an order that
the answer of Mills, by way of a cross-bill, be struck out and
the cross-bill be dismissed.   From this order Mills appealed.

The question that lies at the foundation of this controversy is
whether the deed of conveyance made by Mr. and Mrs. Mills to
the church society was a conveyance to a charitable use.   The

situation before the deed was made—the object for which the society was incorporated, the erection of a church edifice for religious purposes by voluntary contributions on a lot constituting a suitable curtilage for a building devoted to such uses, and the need of the money borrowed on the mortgage to complete and furnish the building—has already been mentioned.

The deed is to the religious society and to their successors, with the words "*but not to their assigns.*" added. It was made for a nominal consideration, and was, therefore, a deed of gift. The word "successors," in the granting part, created a fee, and the words added excluding assigns from the succession are unimportant, except when taken in connection with the *habendum*, as indicating the intent of the grantors. The *habendum* is in these words :.

"To have and to hold unto the said party of the second part and their successors forever, with this express condition and limitation : that neither the said party of the second part nor their successors shall at any time sell, mortgage or in any way convey the said land and premises or any part thereof, and that no building shall be kept, maintained or erected thereon, except for the purpose of public worship and teaching in accordance with the usages, rites and ceremonies of the Protestant Episcopal Church in the United States of America, and also except the proper outbuildings appurtenant thereto."

The rule against perpetuities, as applied to private trusts, does not apply to gifts to charitable uses. *Grey Perpet.* § *590; 1 Lew. Trusts 2011; Perry Trusts* § *384; Perin v. Carey, 24 How. 465, 495, 507; Jones v. Habersham, 107 U. S. 174, 184, 185.* In *Perin* v. *Carey,* Mr. Justice Wayne, delivering the opinion of the court, said : "Such gifts, from the purposes to which they were to be applied and the ownership to which they are subjected, have had the protection of courts of equity to prevent any alienation of them on the part of the person or body entrusted with the offices of giving them effect; and in all such cases land has been decreed by courts of equity to be practically inalienable, or that a perpetuity of them exists in corporations when they are charitable gifts." And in that case it was held that a devise of real estate to a charitable use, with a direction that no part thereof should at any time be alienated, did not

create a perpetuity in the sense forbidden by law, but only a perpetuity allowed by law and equity in the cases of charitable trusts.    In *Jones* v. *Habersham,* a devise of land to a society for the relief of distressed widows and the schooling and maintaining of poor children, "but on the *express condition* that said society shall not sell or alienate said lot, but shall use and appropriate the rents and profits of the same for the support of the school and charities of said institution, without said lot being at any time liable for the debts or contracts of said society," was held to be a good charitable devise.    The distinction is between the purchase of lands by a corporation created for charitable purposes and a donation or gift of lands to such a corporation for uses that are charitable.    In *Magie* v. *German Evangelical Church, 2 Beas. 77,* an incorporated religious society purchased lands for a consideration and procured from the vendor a deed of conveyance in fee, with an *habendum* to hold for the specific uses for which the society was incorporated, with a restriction against alienation or encumbering.    Chancellor Green applied to this conveyance the rule of the common law, that alienation is an inseparable incident of an estate in fee-simple and could not be restrained by any provision or condition whatever, and that, therefore, a mortgage by the society was valid.    But this decision was expressly placed upon the ground that the trust was not created by devise or gift; that the land was purchased for a valuable consideration, and a church was erected thereon by the funds of a corporation, and the trust was inserted in the deed by the society at its instance and for its benefit and protection, and that a trust so created will not protect the property against the payment of debts.    But he adds: "Where property is given to a corporation in trust for a charitable use, the trust is the creature of the donor.    He may impose upon it such character, condition and qualifications as he may see fit.    The property being a gift, no wrong is thereby done to the creditors of the corporation, and a court of equity may well protect and enforce all the conditions of the gift."    This case was affirmed in this court without an opinion, adopting, presumably, the

opinion of the chancellor in the court of chancery. *2 McCart. 500.*

When the charitable use is created by gift, the donor may impose conditions and limitations which shall prevent the diversion of the trust estate from the uses upon which the estate was granted either by the voluntary or involuntary act of the donee. Indeed, the inalienability of the trust estate to other purposes than the uses for which it was donated results from the fact that the trust is created. The question is wholly one of construction. The dominating rule in the construction of deeds and other written instruments is to so construe them as to give effect to the intention of the parties as far as is permitted by the rules of law. The prefatory words in the *habendum* in the deed in question are " upon this express condition and limitation." In the court of chancery the word " condition " in this sentence was construed as a condition designed for the benefit of the grantors to defeat the estate granted. Such a construction, it seems to me, is contrary to the intent of the grantors in making the gift. A church edifice, designed for religious worship in accordance with the usages of the Protestant Episcopal Church, had been erected upon the lot conveyed; the grantors had contributed liberally toward the erection of the building, and, as will be seen presently, consented to a mortgage to raise money to complete it. I think it is obvious that the conditions and limitations inserted in the deed were designed and intended to secure and maintain the property donated for the benefit of the religious society, and not for the advantage of the grantors personally. The word " condition " is a term of flexible meaning. In leases it is often construed as a covenant. " Express words of condition shall be taken for a limitation if the nature of the case requires it." *2 Com. Dig. 360, tit. " Condition " T; 1 Abr. Cas. Eq. 105 note a.* Words of express condition are not inapt as introductory to a declaration of trust. Every conveyance to a charitable use is a conveyance to hold upon the trust declared, and the execution of the trust is the condition upon which the estate is taken and held, to be given effect to not by the forfeiture of the title, but by those methods by means of which a court of equity compels

Mills *v*. Davison.

the performance of such trusts. In *Jones* v. *Habersham*, above cited, the charitable uses were declared in the form and under the introductory words of an " express condition." In a devise of lands to W., " upon this express condition " that he pay certain legacies, it was held by the queen's bench and exchequer chamber that the words " upon this express condition " did not create a condition for breach of which the heir might enter, but created a trust which the devisee taking the legal estate would in equity be bound to perform. *Wright* v. *Wilkin, 2 Best & S. 232.* Other precedents for the use of words of condition as a declaration of trust and not as a condition on the non-performance of which a forfeiture will result, will be found in the following citations : *Attorney-General* v. *Wax Chandlers' Co., L. R. 6 Eng. & Ir. App. 1; Merchant Tailors' Co.* v. *Attorney-General, L. R. 6 Ch. App. 512; Goodman* v. *Mayor of Saltash, 7 App. Cas. 633, 640, 642; Richardson, in re Royal Life Boat Co., 56 L. J. Ch. 784; In re Conningston's Will, 2 L. T. N. S. 535; 1 Lew. Trusts 140.* In the *Wax Chandlers' Case,* Lord Cairnes said : " If I give an estate to A. upon condition that he shall apply the rents for the benefit of B., that is a gift in trust to all intents and purposes." In *Goodman* v. *Mayor of Saltash, supra,* Lord Selborne, speaking of a grant from the crown, said : " If an actual grant so qualified were produced, it would be immaterial whether the word used in it were 'trust,' 'intent,' 'purpose,' 'proviso' or 'condition,' or whether the trust or duty imposed were cognizable in equity or also at law. In such a grant there would be all the elements necessary to constitute what in modern jurisprudence is called a charitable trust." "A trust may be raised by a gift upon condition of doing a certain thing, even when followed by a gift over if the condition be broken. * * * The tendency in early times was to treat such a limitation as a conditional gift, and the tendency in modern times is to treat it as a trust." *Tyssen Char. Bequests 508.* " It is sufficient if it appears from the construction of the instruments that the property was intended to be held subject only to the execution of certain charitable trusts or the performance of certain conditions in favor of charity." *Tud. Char. Trusts (3d ed.) 50.* The other word, " limitation," in its most

Mills *v.* Davison.

technical sense, when used in the *habendum*, is an appropriate term under which to declare the nature and extent of the estate granted and the uses for which the grant is made.

In the deed now in hand the grant is to a religious society incorporated as a Protestant Episcopal church, and the *habendum* is to the grantees and their successors forever, with a limitation that no building shall be kept, maintained or erected on the premises except for the purpose of public worship and teaching in accordance with the usages, rites and ceremonies of the Protestant Episcopal Church, and the proper outbuildings appurtenant thereto, with an express interdict that neither the grantee nor its successors shall at any time sell, mortgage or in any way convey the said land and premises or any part thereof; thus excluding all beneficial ownership or use of the property otherwise than for public worship and teaching in accordance with the rites and ceremonies of the Protestant Episcopal Church. The object for which the donee of a charity was incorporated is always an important element in the construction of the instrument by which a charity is created. *Tud. Char. 52; Attorney-General* v. *Dean &c. of Windsor, 8 H. L. Cas. 369, 405, 406; Miller* v. *Gable, 2 Den. 492; People* v. *Steele, 2 Barb. 398, 405.* The grant is of the entire estate in fee, to hold to the religious society and their successors forever; excluding, nevertheless, all beneficial ownership or use of the property, except for the religious purposes for which the grantee was incorporated. The language of the *habendum* plainly indicates a conveyance for use exclusively for public worship and teaching in conformity with the rites and ceremonies of the Protestant Episcopal Church.

Annexed to the *habendum* is a consent by the grantors to the mortgage by the grantees to raise the money which was required to complete the church edifice. This is the mortgage now under foreclosure. The consent is set out at large in the chancellor's opinion. The mortgage debt is much less than the value of the property,

Power to mortgage is frequently inserted in deeds of trust. Such a power, if executed, does not destroy the entire trust. The trust remains encumbered only by the mortgage. The consent

in this case will have the effect to validate the mortgage as a lien upon the premises conveyed. The purchaser at a foreclosure sale will take the premises by a title free from the trust; but the surplus money arising from such sale will belong to the society, to be held upon the original trust.

The defendant Mills, as the founder of the charity, has a standing to appear in court to restrain the diversion of the property donated from the charitable uses for which it was given. The specific prayer of the cross-bill is that the surplus money arising from the sale in the foreclosure proceedings, after paying the mortgage debt, interest and costs, may be paid to him. This relief cannot be granted. The deed of the grantors having conveyed away the entire estate in the premises, a resulting trust will not arise in favor of the grantors by reason of an abuse of the trust. *Sanderson* v. *White, 18 Pick. 328; 2 Perry Trusts* § *744.* But the facts stated in this opinion are all set out in the cross-bill, exhibiting the purposes for which the deed was made; and there is also a prayer for other or further relief. The bill, as framed, is sufficient to bring within the cognizance of a court of equity the construction of the deed and relief by way of preventing a diversion of the property conveyed to purposes at variance with the charitable uses to which it was devoted.

The order striking out the cross-bill should be reversed and the record be remitted &c.

*For reversal*—The Chief-Justice, Depue, Gummere, Lippincott, Ludlow, Van Syckel, Barkalow, Bogert—8.

*For affirmance*—Dixon, Garrison, Magie, Hendrickson, Nixon—5.