STEWART v. FRANCHETTI. (No. 7179.)

(Supreme Court, Appellate Division, First Department. May 7, 1915.)

1. WILLS ⬳226—ACTION TO ESTABLISH—DEATH OF PARTY—ABATEMENT.

Under Code Civ. Proc. § 765, providing that title does not authorize the entry of a judgment against a party who dies before a verdict, report, or decision is actually rendered against him, and that in that case the verdict, report, or decision is absolutely void, and section 3347, subd. 6, providing that section 765, among other sections, applies to all courts, a decree of the Surrogate's Court, adjudging that a codicil to a will did not create a valid charitable trust, was void as to persons claiming through a party to the proceeding in which it was entered, who died before the entry of such decree.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 548; Dec. Dig. ⬳226.]

2. CHARITIES ⬳21—VALIDITY OF CHARITABLE TRUSTS—UNCERTAINTY AS TO BENEFICIARIES.

Under Personal Property Law (Consol. Laws, c. 41) § 12, providing that no gift or bequest to benevolent uses, which shall in other respects be valid, shall be deemed invalid by reason of the indefiniteness of the persons designated as the beneficiaries thereunder in the instrument creating it, and that if in such instrument a trustee is named to execute the gift or bequest the property shall vest in him, otherwise it shall vest in the Supreme Court, a bequest to be spent "in charity" in Italy and in the city of New York created a valid charitable trust.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 44–50; Dec. Dig. ⬳21.]

3. CHARITIES ⬳29—MISUSE OF TRUST FUND—REVERSION.

When a valid charitable trust is created, without provision for a reversion, the interest of the donor is permanently excluded, and the title to the property does not revert to the donor or his representatives; and hence, though there was a misuse of the trust fund, the donor, or the assignee of one of her residuary legatees, was not entitled to the return of the fund.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 59, 60; Dec. Dig. ⬳29.]

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. CHARITIES ⬯⬰49—MISUSE OF TRUST FUND—REVERSION.

  Where a charitable trust was created, if there was a misuse of the fund, an assignee of one of the donors' residuary legatees had no standing to enforce the trust.

  [Ed. Note.—For other cases, see Charities, Cent. Dig. § 82; Dec. Dig. ⬯⬰49.]

5. CHARITIES ⬯⬰48—DEATH OF TRUSTEE—ADMINISTRATION BY SUPREME COURT.

  Upon the death of the trustee under a valid charitable trust, the execution of the trust devolved upon the Supreme Court.

  [Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 78, 81, 104, 106; Dec. Dig. ⬯⬰48.]

Appeal from Special Term, New York County.

Action by William D. Stewart against Leopoldo Franchetti. From an order sustaining a demurrer, and from a judgment entered thereon, dismissing the amended complaint, plaintiff appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Allen S. Wrenn, of New York City, for appellant.

Lewis L. Delafield, of New York City (Julius Goldman, of New York City, on the brief), for respondent.

McLAUGHLIN, J. The defendant demurred to the amended complaint, and then moved, under section 547 of the Code of Civil Procedure, for judgment on the pleadings. The demurrer was sustained, and the motion granted. Plaintiff appeals.

The action is for money had and received. The facts alleged in the complaint are substantially as follows:

That on or about October 5, 1909, the will of Julia Hallgarten, and a codicil thereto, were admitted to probate by the Surrogate's Court of the County of New York and letters testamentary issued to the executors therein named; that by the terms of the will the residuary estate was bequeathed, in equal shares, to her two daughters, Alice, who subsequently married the defendant Franchetti, and Eleanor, who married one Von Koppenfels; that the codicil contained the following provision, "I give, devise, and bequeath the amount which has been bequeathed to me by the last will and testament of my son Walter N. Hallgarten, to my daughter Alice Hallgarten Franchetti, it being understood between us that she has to spend said amount in charity, both in the kingdom of Italy and in the city of New York, N. Y., U. S. A.;" that on or about December 15, 1911, in a proceeding in the Surrogate's Court of the County of New York, a decree was entered adjudging, among other things, that the bequest contained in the codicil was void, and that the money ineffectually attempted to be bequeathed thereby passed to the residuary legatees under the will; that Alice Hallgarten Franchetti was originally a party to the proceeding and filed an instrument waiving the issuance of a citation, and consenting to the judicial settlement of the executor's account; that she died on October 22, 1911, nearly two months prior to the entry of the decree; that in December, 1910, the attorneys for the executor wrote Eleanor Hallgarten that a question had arisen as to the validity of the trust declared in the codicil of Julia Hallgarten's will, and asked her wishes in the event that it should be declared by the surrogate to be invalid, in reply to which she wrote, "I wish my mother's intention carried out, even if the surrogate should decide that the trust is invalid;" that the bequest contained in the codicil amounted to $98,337.11, of which, under the surrogate's decree, Eleanor Hallgarten and Alice Franchetti, as residuary legatees, were each entitled to one-half thereof,

or $49,168.55; and that on March 28, 1911, the executors, relying upon the above statement in the letter of Eleanor Hallgarten, paid to Alice Franchetti the entire sum of $98,337.11.

The complaint then alleges:

"That the said sum of $49,168.55, to which the said Eleanor Hallgarten von Koppenfels was entitled as aforesaid, was paid to and received by said Alice Franchetti without consideration and upon condition that the same should be by her expended in charity, both in the kingdom of Italy and in the city of New York, N. Y., U. S. A.;" that Alice Franchetti, after the receipt of said sum, invested the same in interest-bearing bonds and caused the same to be removed from the state of New York and from the United States; that she has failed and neglected to perform the condition upon which said sum was paid to her, in that she has failed and neglected to expend any part of said moneys so received and invested by her in charity either in the kingdom of Italy or in the city of New York; that she died on the 22d of October, 1911, and at the time of her death still had in her possession all of said moneys which had been so invested; that the executors of the will of Julia Hallgarten claim that their responsibility for said moneys ceased and ended upon said payment, and by a decree of the Surrogate's Court of the County of New York after the payment was made, in a proceeding for the judicial settlement of their accounts, they were relieved and discharged from all further liability for said moneys; that, after the death of Alice Franchetti, the defendant Leopoldo Franchetti took possession of said securities and caused a substantial amount of the same to be sold and the proceeds reinvested; that, after the death of Alice, Eleanor Hallgarten von Koppenfels demanded of defendant payment to her of the sum of $49,168.55, no part of which has been paid; that prior to the commencement of the action all her right, title, and interest in and to the same were assigned to the plaintiff; that, by reason of the facts stated, defendant is indebted to the plaintiff in the sum of $49,168.55, for which, together with the interest thereon, judgment is demanded.

[1] The principal question presented for our determination is whether a valid trust was created in the codicil to Julia Hallgarten's will, and in this connection it is contended by the appellant that that question is not open for consideration, since the decree of the Surrogate's Court determined to the contrary, and it cannot be attacked collaterally. That decree, according to the allegations of the complaint, was not entered until December 11, 1911, about two months after the death of Alice Franchetti, and therefor, as to all persons claiming through her, is void. Code of Civil Procedure, § 765; Id. § 3347, subd. 6; Requa v. Holmes, 16 N. Y. 193; Carolan v. O'Donnell, 141 App. Div. 463, 126 N. Y. Supp. 551.

[2] Considering the question, then, as an original one, I am of the opinion that a valid charitable trust was created. The development of the law relating to charitable trusts in this state, since the passage of the Tilden Act so-called (chapter 701, Laws of 1893, as amended, now section 12, Personal Property Law), has been so frequently considered by the courts that a further review seems almost unnecessary. Under this act charitable trusts are no longer invalid by reason of the indefiniteness or uncertainty of the persons designated as beneficiaries. Thus, in Matter of Robinson, 203 N. Y. 380, 96 N. E. 925, 37 L. R. A. (N. S.) 1023, the court sustained a trust which directed the trustees to disburse the principal or interest of the residuary estate of a testatrix, or both, in their discretion:

"To provide shelter, necessaries of life, education, general or specific, and such other financial aid as may seem to them fitting and proper to such per-

sons as they shall select as being in need of the same. Preference is to be given to persons who are elderly or disabled from work, and to persons who are Christians, of good moral character, members of one of the so-called evangelical churches, to wit, the Methodist, Baptist, Presbyterian, Congregational, Moravian or Episcopal, and who are not addicted to the use of intoxicants or tobacco, nor to attendance at theatrical entertainments."

In Matter of Cunningham, 206 N. Y. 601, 100 N. E. 437, the testator bequeathed $5,000 to his executors:

"To be by them applied in their best judgment and discretion to such charitable and benevolent associations and institutions of learning for the general uses and purposes of such associations and institutions as my said executors may select and in such sums respectively as they may deem proper."

In sustaining the trust, Bartlett, J., who delivered the opinion of the court, said:

"A considerable number of English cases might be cited in which the purpose of the charitable trust which received the sanction of the court was quite as indefinite. I shall refer to only a few of them. In Moggridge v. Thackwell, 7 Vesey, 36b, 85, Ann Cain gave her residuary personal estate to her executor, 'desiring him to dispose of the same in such charities as he shall think fit, recommending poor clergymen who have large families and good characters,' and Lord Eldon affirmed the decree of Lord Thurlow, who had held that the trust was sufficiently definite to be executed by the court. In Legge v. Asgill, Turner & Russell, 265, note, the testatrix made a number of bequests in her will, and executed a codicil providing 'if there is money left unemployed, I desire it may be given in charity.' It was held that this was an effective gift of £2,000 of personal estate to charitable purposes. In Whicker v. Hume, 7 House of Lords Cases, 123, 154, there was a bequest of personal property 'upon trust to apply and appropriate the same in such manner as the said trustees or trustee shall, in their absolute and uncontrolled discretion, think proper and expedient for the benefit and advancement and propagation of education and learning in every part of the world.' It was objected that the gift was of such an extensive nature that it was impossible to carry it into effect; but Lord Chelmsford held that the purpose of the testator was to promote teaching and instruction, and the circumstance that the whole habitable world was open to the discretion of the trustees did not prevent the gift from being available as a good charitable bequest."

In Matter of Miller, 149 App. Div. 113, 133 N. Y. Supp. 828, this court held, where the income of a trust fund was directed to be expended for scholarships to be granted, "first, to the sons of poor clergymen in France intending to become ministers of the gospel, as may desire the same, and, secondly, in the absence of such to any poor young men wishing to become ministers of the gospel or missionaries," that the trust was valid and could be enforced. See, also, Buell v. Gardner, 83 Misc. Rep. 513, 144 N. Y. Supp. 945, where a trust created for the benefit of "institutions and persons who may be worthy, needy, and deserving the same" was held good, and Utica Trust & Safe Deposit Co. v. Thomson, 87 Misc. Rep. 31, 149 N. Y. Supp. 392, where the income of a trust fund was directed to be paid yearly "to such charity or charitable institutions as shall be designated by and agreed upon by any three of said trustees."

The language used in the codicil in creating the trust under consideration is no more indefinite than in some, at least, of the authorities cited. The amount given was to be spent in charity. That is clear. The purpose of the statute was to validate gifts or bequests where the .

beneficiaries were indefinite and uncertain. Here all that is uncertain is as to who shall be the recipient of the charity, and that necessarily must be left to the discretion of the trustees.

Matter of Shattuck, 193 N. Y. 446, 86 N. E. 455, upon which the appellant principally relies, is not, as I read it, an authority for holding that the trust is void for indefiniteness of purpose; on the contrary, it seems to me an authority to the effect that the trust here created is valid. Judge Chase, who delivered the opinion, said:

"The act of 1893 doubtless saves a trust from being invalid because the beneficiaries are indefinite and uncertain, but a trust may be so indefinite and uncertain in its purposes, as distinguished from its beneficiaries, as to be impracticable, if not impossible, for the courts to administer."

It was there held that the purpose for which the trust was designed was not necessarily charitable. This clearly appears from a statement in the opinion in Matter of Cunningham, supra, Judge Bartlett said:

"Inasmuch as it was possible, under the terms of the Shattuck trust, that it might be devoted in whole or in part to private use, the entire gift was pronounced invalid."

[3, 4] If the trust be valid, the plaintiff, as the assignee, has no interest therein; and the same result follows if the trust created by the will were disregarded, and the money sought to be recovered were given to Alice Franchetti by her sister, upon condition that she expend the same in the charity alleged. It is well settled that when a valid charitable trust is created, without provision for a reversion, the interest of the donor is permanently excluded. In the absence of such a provision the title to the property does not revert to the donor or his representatives. This rule was restated in Associate Alumni v. Theological Seminary, 163 N. Y. 417, 57 N. E. 626; Judge Cullen, who delivered the opinion of the court, saying:

"The general rule is: 'If the trustees of a charity abuse the trust, misemploy the charity fund, or commit a breach of the trust, the property does not revert to the heir or legal representative of the donor, unless there is an express condition of the gift that it shall revert to the donor or his heirs, in case the trust is abused; but the redress is by bill or information by the Attorney General or other person having the right to sue.' 2 Perry on Trusts, § 744; Sanderson v. White, 18 Pick. (Mass.) 328, 29 Am. Dec. 591; Vidal v. Girard's Executors, 2 Howard (U. S.) 191, 11 L. Ed. 205; Mills v. Davison, 54 N. J. Eq. 659, 35 Atl. 1072, 35 L. R. A. 113, 55 Am. St. Rep. 594."

See, also, 2 Story's Eq. Jur. § 1177; Potter v. Chapin, 6 Paige Ch. 639.

[5] If it be true, therefore, as contended, that there has been a misuse of the trust fund, that would not entitle the donor, or in the case at bar, the assignee of one of her residuary legatees, to the return of the fund. The legal title was in the trustee, and, she having died the execution of the trust devolves upon the Supreme Court (Allen v. Stevens, 161 N. Y. 122, 55 N. E. 568, Matter of Griffin, 167 N. Y. 71, 60 N. E. 284), which carries the same into effect by a trustee appointed by it. The plaintiff has no standing to maintain such action, since he has no interest in the fund, or the enforcement of the trust.

It follows, therefore, that the order and judgment appealed from should be affirmed, with costs. Order filed. All concur.