HATTIE O. MONTGOMERY, JEFF WALDRON, and W. H. WALDRON, both minors, by their uncle and next friend, W. W. MONTGOMERY, *Appellants,* v. D. T. CARLTON, described in said bill as D. F. CARLTON, H. E. CARLTON, L. L. MORGAN, T. S. CARLTON, D. G. BARNETT, CLARK BROWN and W. B. SCOTT, as Trustees of the Trinity Methodist Episcopal Church, South, of Arcadia, Florida, formerly Trinity Church, Arcadia Mission, Tampa District of Florida Conference of Methodist Episcopal Church, South, and BOARD OF CHURCH EXTENSION OF METHODIST EPISCOPAL CHURCH, SOUTH, D. T. CARLTON, Trustee for Methodist Church, Arcadia, Florida, and THE CITY OF ARCADIA, a Municipal Corporation, *Appelles.*

En Banc.

Opinion filed January 28, 1930.

154

*E. Dixie Beggs,* for Appellants;

*Treadwell & Treadwell,* and *L. J. Robbins,* for Appellees.

ANDREWS, Commissioner:

Certain heirs of Francis M. Waldron, who died intestate, filed a bill in the Circuit Court of DeSoto County against six other heirs of Francis M. Waldron; and against D. F. Carlton, H. A. Carlton, L. L. Morgan, T. S. Carlton, D. G. Barnett, Clark Brown and W. B. Scott, as trustees of the Trinity Methodist Episcopal Church, South, of Arcadia, formerly Trinity Church, Arcadia Mission, Tampa District of Florida Conference of Methodist Episcopal Church, South; and Board of Church Extension of Methodist Church, South; D. F. Carlton, Trustee for Methodist Church of Arcadia and the City of Arcadia, a municipal corporation.

It appears from said bill that Francis M. Waldron, on December 15, 1890, executed and delivered a deed for a consideration of $200.00 to Samuel B. Carson, Thomas Williams, James N. Blount, Thomas H. Bolshaw, Bryant G. Granger and Oscar T. Stanford, and to himself, Trustees for Trinity Church Arcadia Mission, Tampa District, Florida Conference of the Methodist Episcopal Church, South, and their successors in office, certain described lands consisting of about one-third of an acre at Arcadia, Florida; that the said trustees accepted said trust and entered upon the performance thereof.

The bill alleges that said deed was "in trust, that the said premises shall be used, kept, maintained and disposed of as a place of divine worship, for the use of the ministry and membership of the Methodist Episcopal Church, South,

subject to the discipline, usage and ministerial appointments of said church as from time to time authorized and declared by the General Conference of said church. And the annual conference within whose bounds the said premises are situate.''

The bill alleges that the said trust deed was and is void, for the following reasons:

(1) The acknowledgment to the trust deed was taken by Thomas B. Bolshaw, a trustee and a grantee in the deed of trust;

(2) That the trust deed is not sufficient and certain as to its purpose;

(3) That the said trust deed or the declaration thereof created a perpetuity, a limitation, taking the subject matter out of commerce for a period of time greater than of a life in being and 21 years thereafter, and thus violated the rule against perpetuities;

(4) That said deed does not sufficiently and definitely designate a *cestui que* trust;

(5) That said deed sought to convey to said trustees the said property and the said trustees were at the time of said conveyance *cestuis que* trust of said property.

The bill further alleges that the City of Arcadia claims to own a portion of said lands, the exact quantity or portionate share of which is to complainant unknown.

The bill further alleges that the said trustees and their successors in title did not ''use, keep, maintain and dispose of, as a place of divine worship for the use of the ministry and membership of the Methodist Episcopal Church, South,'' etc., ''that is to say: on or about the year 1920, they moved the place of divine worship from said property to another location and moved said church from said property, and ever since they have failed to 'use, keep, main-

tain and dispose of, as a place of divine worship for the use of the ministry and membership of the Methodist Episcopal Church, South'," etc.; that on to-wit: September 22nd, 1925, D. T. Carlton, Trustee for Methodist Church, Arcadia, Florida, made and executed a certain contract whereby he contracted to sell to other parties a part of said property and did divert said property from the terms of said purported trust; that the said purported trust has been completed and nothing remains to be done in pursuance thereof.

It is further alleged that the said trustees on the 14th day of June, 1924, executed and delivered to the Board of Church Extension of the Methodist Episcopal Church, South, a mortgage on said property and that on the date of said mortgage, that said trustees had no title whatsoever to the property and that the said Board of Church Extension acquired no title to or lien on or against said property by virtue of said mortgage; that D. T. Carlton, Trustee, had no power or authority to make said contract as alleged and that complainants have never received any money secured by said mortgage mentioned in said contract.

The *bona fide* object of the suit is for partition of the land between the eight heirs of the original donor. There is attached to the bill of complaint a certified copy of the deed of conveyance as complainants' Exhibit A, reading as follows:

"This Indenture, made the fifteenth day of December, in the year of our Lord One Thousand Eight Hundred and Ninety. Between Francis M. Waldron and Martha E. Waldron, his wife, of the County of DeSoto and State of Florida, of the first part, and Samuel B. Carson, Thomas Williams, James N. Blount, Thomas H. Bolshaw, Francis M. Waldron, Bryant G. Granger

and Oscar T. Stanford, Trustees of Trinity Church, Arcadia Mission, Tampa District, Florida Conference of the Methodist Episcopal Church, South, parties of the second part;

"WITNESSETH, That the said parties of the first part for and in consideration of the sum of Two Hundred Dollars, lawful money of the United States of America, to them in hand paid by the said parties of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold, conveyed and confirmed, and by these presents do grant, bargain, sell, convey and confirm, unto the said parties of the second part, and their successors in office 'In trust, that the said premises shall be used, kept, maintained and disposed of, as a place of divine worship for the use of the ministry and membership of the Methodist Episcopal Church, South. Subject to the discipline, usage and ministerial appointments of said Church as from time to time authorized and declared by the General Conference of said Church. And the annual Conference within whose bounds the said premises are situate.'

"All the following piece, parcel, lot or tract of land, situate, lying and being in the County of DeSoto and State of Florida, and described as follows, to-wit:

"Commencing on the line between the Northeast Quarter of the Northeast Quarter and the Northwest Quarter of the Northeast Quarter of Section Thirty-six, Township Thirty-seven, South, of Range Twenty-four East, where the said line intersects Oak Street, Arcadia, on the North side of the said Street; thence following the line of Oak Street Westwardly, One Hundred and Twenty-two feet;

thence at a right angle, Northwardly Three Hundred and Thirty feet to the said line between the Northeast Quarter of the Northeast Quarter and the Northwest. Quarter of the Northeast Quarter of Section Thirty-six, Township Thirty-seven, South, of Range Twenty-four, East; thence South along said line Three Hundred and Fifty-one feet to the place of beginning, containing over one-third of an acre.

"Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or appertaining; and every right, title or interest, dower, or right of dower, legal or equitable, of the said parties of the first part, of, in and to the same.

"To have and to hold the same unto the said parties of the second part and their successors in office, for the uses and purposes hereinbefore stated. And the said parties of the first part, for themselves and their heirs, executors and administrators, do hereby covenant, that the said parties of the first part at the date hereof, are lawfully seized in fee simple of the above described premises, and are in peaceable and undisputed possession of the same. That the said parties of the second part and their successors in office, shall at all times hereafter have peaceable possession of said premises, without suit, eviction or disturbance of the said parties of the first part, or any person or persons lawfully claiming or to claim the same: That the said premises are free from all incumbrances and liens of every nature and kind soever, including taxes. And the said parties of the first part, for themselves and their heirs, the above described premises, and every part and parcel thereof, with the appurtenances unto the said parties of the second part and their successors in office, against the said parties of the first part and

their heirs, and against all and every person or persons lawfully claiming or to claim the same, shall and will warrant and by these presents forever defend.

"In Witness Whereof the said parties of the first part have hereunto set their hands and seals the day and year first above written.

FRANCIS M. WALDRON     (L. S.)

her

MARTHA E. (X) WALDRON     (L. S.)

mark

Signed, sealed and delivered in the presence of
ISAH WILLIAMS
JOSHUA (his mark) BROWNING
X

"State of Florida,
DeSoto County.

"I hereby certify that on this fifteenth day of December, A. D. 1890, before Thomas H. Bolshaw, a Notary Public, personally appeared Francis M. Waldron and Martha E. Waldron, his wife, to me known to be the persons described in and who executed the foregoing instrument and severally acknowledged the execution thereof to be their free act and deed for the uses and purposes therein mentioned, and the said Martha E. Waldron, the wife of the said Francis M. Waldron, on an examination taken and made separately and apart from her said husband, did acknowledge that she made herself a party to the said deed for the purpose of renouncing and relinquishing her dower, or right of dower in and to the lands, tenements and hereditaments therein described and thereby granted and released, and that she executed the said

deed freely and without fear or compulsion of her said husband.

"WITNESS my hand and seal at Arcadia, the date aforesaid.

(Seal) THOS. H. BOLSHAW,
Notary Public."

The defendants, trustees, filed a general demurrer to the bill, which was sustained by the chancellor. This demurrer alleges as matters of law to be argued before the lower court as follows:

"FIRST': Because there is no equity in said bill of complaint.

"SECOND: Because the bill distinctly shows upon its face that the deed sought to be cancelled does not contain a reversion clause and without such clause complainants are not entitled to the relief sought.

"THIRD: Because said bill of complaint shows upon its face that the deed sought to be cancelled recites a valuable consideration and with this consideration being recited in said deed the same cannot be cancelled.

"FOURTH: The said bill distinctly shows upon its face that it does not create a perpetuity.

"FIFTH: Because the mere fact that the deed was acknowledged by one of the grantors does not make said deed void.

"And for other good and sufficient reasons appearing on the face of said bill of complaint."

The City of Arcadia also filed a general demurrer covering substantially the above grounds.

From the order of the chancellor sustaining the demurrers, complainants took an appeal to this Court for review.

It is assumed that the trial court considered the question as to whether or not a suit for partition could be properly brought under the facts alleged in this bill of complaint, where it has the effect of litigating a disputed title to lands.

A partition suit is not the proper proceeding in which to settle a disputed title; yet where the case may be properly one of partition of lands between common owners thereof, one or more of whom are complainants and the others are defendants, and some of them are in possession, in the absence of a demurrer to the bill on that ground, all controversies between them as to the legal title and right of possession as to the lands of which partition is sought, may be settled. Camp Phosphate Co. v. Anderson, 48 Fla. 226, 37 So. R. 722; Koon v. Koon, 55 Fla. 834, 46 So. R. 633; Terra Ceia Estates v. Taylor, 68 Fla. 261, 67 So. R. 169; Ellis v. Everett, 79 Fla. 493, 84 So. R. 617; Gaskins v. Mack, 91 Fla. 284, 107 So. R. 918; Christopher v. Mungen, 61 Fla. 513, 55 So. R. 273.

Under Section 4225, Comp. Gen. Laws (1927) causes of action, of whatever kind, except replevin and ejectment, by and against the same parties in the same rights, may be joined in the same suit.

In the case of Reid v. Barry, 93 Fla. 849, 112 So. R. 846, construing a deed from private parties for religious purposes, where a consideration was also paid in money, this Court, speaking through Mr. Justice BROWN, said:

"It is a general principle running through the law pertaining to the construction of deeds that they are to be construed most strongly against the grantor and most beneficially for the party to whom they are made, and that a deed shall never be held void when its language may be applied, to any lawful intent, to make it good."

In the case of West Yellow Pine Company v. Sinclair, 83 Fla. 118, 90 So. R. 828, this Court said:

"The primary consideration in the construction of a deed is the intention of the parties thereto, and this intention must be gathered from an examination of the whole instrument, which must be so construed as to render all its provisions consistent and harmonious, if this may be done."

See also Hull v. Burr, 58 Fla. 432, 50 So. R. 754.

The first point raised by appellants is that the trust deed is void because the acknowledgments of the grantors were taken by Thomas B. Bolshaw, a trustee, and one of the grantees in the deed of trust.

The bill alleges that this deed was executed and delivered December 15, 1890. We have held that a deed is void, if the acknowledgment of the grantor is taken by a grantee. Hogans v. Carruth, 18 Fla. 587; Fla. Sav. Bk. & Real Es. Ex. v. Rivers, 36 Fla. 575, 18 So. R. 850. Such a deed, however, is binding as between the parties or their heirs and its execution may be established by common law evidence. Hogans v. Carruth, *supra;* Marsh v. Bennett, 49 Fla. 186, 38 So. R. 237.

Admitting the deed to be defective when it was executed and delivered, it appears that the grantees went into possession in 1890 and continued to use it for church purposes. Chapter 10171, Laws of Florida 1925, (now Sections 4660, 4661 and 4662, Comp. Gen. Laws of Florida 1927) provides that after a lapse of 20 years, all deeds shall be deemed valid and effectual for conveying lands therein described and no person shall assert any claim to any such lands as against the claimants under such deed or their successors in title. The allegations of the bill show that this property was occupied by defendant trus-

tees for more than 20 years prior to the filing of this bill of complaint.

Appellants further contend that the trust deed does not sufficiently and definitely designate a *cestui que* trust, and the purported trust deed is not sufficient and certain as to its purpose.

The trust deed names certain designated persons as grantees who are also ma'de trustees and the allegations of the bill of complaint show clearly the persons who are presumed to be the successors to the original trustees and they are made parties defendant to this suit. The appellants insist that even if the trust deed was valid at its inception, it appears now that the purpose for which it was declared has failed and that the property has reverted to the heirs of Francis M. Waldron, even in the absence of an express provision in the trust deed for a reverter.

In support of the above, appellants appear to rely to a great extent upon the case of Christopher v. Mungen, 61 Fla. 513, 55 So. R. 273.

In fact, solicitor for appellants states in his brief, before us, that he had that case before him when the bill of complaint was drafted. An examination will demonstrate that the Christopher v. Mungen case, *supra*, is not applicable, as it has reference solely to a private trust, which has many restrictions not applicable to charitable trusts.

"Private trusts which concern individuals are limited in their duration. Being for individuals, they must be certain, and the individual or individuals must be identified within a limited period. They can endure only for a life or lives in being, and twenty-one years and the period of gestation in addition. On the other hand, public trusts or charities, existing for the general and indefinite public, may continue for an indefinite period." 1 Perry on Trusts 16, Sec. 23.

The principle of law governing the perpetuity of a private trust is almost the reverse of the principle of law governing the perpetuity, as well as the reverter, of a charitable trust. There can be no question, but that the deed and all the circumstances surrounding the conveyance of this property to the Methodist Episcopal Church South show that the intent of the grantors and grantees was to creat a charitable trust in perpetuity for religious purposes.

A gift to a church is a charitable one, and it is well settled that a Christian Church, lawfully existing is a charity within the meaning of the Statute of Elizabeth. The very term Church imports an organization for religious purposes and property given to it *eo nomine*, in the absence of a declaration of trust or use must, by necessary implication, be intended to be given to promote the purpose for which the Church is instituted.

"When lands have been donated to charity, and the title is vested absolutely in trustees for charitable uses, they are not only inalienable for other purposes, but they also do not revert to the donor or to his heirs," and "when no power of revocation is reserved, or provision for reverter made, the trustees' abandonment or abuse of the trust does not cause the trust to fail, or the property to revert. If the estate is misapplied, the fitting remedy is not its forfeiture to the grantor or his heirs, but a proceeding on the equity side of the court to enforce the trust." 11 C. J. 371.

It also appears well settled that a deed or devise for a charitable use to church officers, conferences and associations, whether incorporated or unincorporated, which exist solely for charitable purposes, are valid. 2 Perry on Trusts (7th ed.) 1247, Sec. 730; 11 C. J. 338-339.

In a country like ours, where it is one of the fundamental canons of the political law that there shall be no established religion, and that government shall not actively participate in the support or dissemination of religion of any sort, all organized churches must depend upon the eleemosynary contributions of individuals. 5 R. C. L. 325. It necessarily follows that all grants in trust for the support of public worship and religious instruction, are valid as charitable trusts and will be given that effect.

The deed in question provides that the property, of about one-third of an acre, is bargained, conveyed and sold to the trustees therein designated and their successors in office "in trust that said premises shall be used, kept, maintained and disposed of as a place of Divine Worship for the use of the ministry and membership of the Methodist Episcopal Church South, subject to the Discipline, usage and ministerial appointments of said Church as from time to time authorized and declared by the General Conference of said church and the Annual Conference within whose bounds the said premises are situate."

The above quoted portion of the deed providing for the trust, appears to have been used by the Methodist Episcopal Church South in several of the States. We are, therefore, not without precedents, as the same or very similar legal questions have arisen and been adjudicated in those states, involving the above quoted provision. Among others, a case directly in point is that of Glaze v. Allen (Mo.), 213 So. W. R. 784. In that case it appears that the appellant and his wife, as grantors, executed a deed conveying land in dispute to three persons, designated as "Trustees of the Methodist Episcopal Church South." The deed contained the language with reference to the trust, exactly as that quoted above from the deed in the instant case. A church was erected on the property, but about

six or seven years before suit was brought, the property was sold and the church building removed by the purchaser. By order of the Quarterly Conference of the Methodist Episcopal Church, South, the proceeds were used in repairing another church. At the time of the sale, the church Discipline provided that church property which had gone out of use could be sold and the proceeds invested in other church property under the direction of the Quarterly or District Conferences. An action was brought by the grantors to quiet title and also in ejectment to recover possession of the property. The Court said:

"Appellant contends that the title to this one acre of land reverted to him when the property was sold and its use as church property was abandoned. We are unable to agree with this contention.

"In determining this question it is not necessary that we determine whether the sale of the property was in violation of the trust created by the grantor— this because, even though it should be conceded that it was a violation of the trust, it would not in this instance cause the title to revert to the appellant, the donor.

"The language of the deed by which appellant established the trust in this property is unambiguous, and contains no language that can be construed as a condition subsequent, or any words providing for a forfeiture or reverter.

"The rule may be considered as well established in this State under such circumstances. 'A gift to charity is forever' and such gifts 'do not revert to the donor or to his heirs.'

"This exact point is so ruled in the fairly recent case of Mott v. Morris, 249 Mo. 137, 155 So. W. R. 434.

\* \* \* We hold that the title to this land, under the facts here disclosed, did not revert to the appellant, the donor, and that therefore the judgment of the circuit court was proper and should be affirmed.''

In the above case of Glaze v. Allen, it appears that the deed was executed and delivered by grantors in 1891, which is one year after the deed was executed and delivered in the present case. At the time this sale was made, the Discipline of the Methodist Episcopal Church, South, which had been duly promulgated by the General Conference of that church, contained the following provision:

''Paragraph 508. The trustees, with consent of the preacher in charge and the quarterly conference, or if a district parsonage, then of the presiding elder and the district conference, shall have power to sell any church or parsonage property, which has gone out of use, or which should be removed to another place, the proceeds of which shall be invested in other church property under the direction of the quarterly or district conference.''

In paragraph 392 of the discipline it is provided that:

''In all conveyances of ground for the building of houses of worship, or upon which they may have been already built, let the following clause be inserted in the proper place:'' (Then follows the exact language quoted above in the deed in question on this appeal.)

In the case before us, the original grantor is shown to have been also designated as one of the trustees in the deed of trust, and all of those concerned with the transfer the grantor must have known the full purpose and intent

of the deed; and applying the rule as stated above in the cases of Yellow Pine Company v. Sinclair and that of Reid v. Barry, *supra,* that the primary consideration in the construction of a deed is the intent of the parties and this intention must be gathered from an examination of the whole instrument, it leaves little or no room for doubt that the property was granted to the church in perpetuity, without any condition subsequent or reverter.

Another case directly in point is that of Thompson et al. v. Hart, 133 Ga. 540, 66 So. E. R. 270. In fact, it involved a trust deed made to the Methodist Episcopal Church, South, and used the same language quoted in the deed in the present case and that of Glaze v. Allen, *supra.*

In the Georgia case, the Court said:

"The language employed by the grantor in those clauses of the deed which it is insisted made the deed a grant upon a condition subsequent cannot be construed as having that effect."

In the case of Stewart v. Tranchetti (1915) 167 App. Div. 541, 153 N. Y. Supp. 453, it was said in this connection:

"It is well settled that when a valid charitable trust is created, without provision for a reversion, the interest of the donor is permanently excluded. In the absence of such a provision the title to the property does not revert to the donor or his representatives." See also Mills v. Davison, 54 N. J. Eq. 659, 35 Atl. R. 1072; 35 L. R. A. 113."

There is another important feature advanced by appellees, in this case, which has direct reference to the fact that $200.00 was paid grantors as a consideration at the

time the deed was executed and delivered. In the above case of Reid v. Barry, this Court used with approval the following language:

"If a conveyance has been made upon a valuable consideration, there can be no resulting trust to the grantor, as the payment of valuable consideration imports an intention to benefit the grantee in case the trusts declared fail, or are imperfectly declared or do not take effect for any other reason.

"But if the conveyance is by deed for a valuable consideration, the grantee will take the beneficial interest if the trust fail to be declared, or fail in any way; for there can be no resulting trusts (to the grantor) where the grantee pays a valuable consideration for the estate." See also 1 Perry on Trusts, Secs. 151 and 158.

The Court further said in the above case:

"As was said in Semple v. Semple, (90 Fla. 7) 105 So. R. 134, in the opinion of Mr. Justice Ellis: 'The declaration of the use to the grantee and his heirs in the habendum, assuming the conveyance to have been in the common form, is conclusive between the parties, and excludes any resulting trust to the grantor'."

There is nothing in the bill of complaint so far as shown to the contrary that the cash consideration of $200.00 paid by the grantee church for about one-third of an acre (evidently bordering the town of Arcadia) in 1890 was not an adequate price. We can take judicial knowledge of the fact that property has greatly advanced in value in that vicinity since the date of the deed.

A feature appearing in the deed, by no means insignificant, is that the deed of trust provides that the said land is sold and conveyed to grantees and their successors in office "In trust, that the premises shall be used, kept, maintained, and *disposed of* as a place of Divine worship," etc.

"Disposed of" means "to part with; to relinquish; to get rid of." If the phrase has no such meaning it would seem to have no place in the deed. It appears quite clear that this phrase was intended to convey this meaning when it is read in connection with paragraphs 508 and 392 *supra* of the Discipline of the Methodist Episcopal Church South, in use at the time, as shown by the case of Glaze v. Allen, *supra*. See also 3 Words and Phrases, 2114-2118.

It will be observed that the habendum clause—To have and to hold the same unto said parties of the second part and their successors in office, "for the uses and purposes hereinbefore stated," in the deed here in question must mean that above quoted provision has reference solely to the estate granted, which gives the trustees power to "dispose of" the property described. This provision of course does not imply that the proceeds from the sale of all or any portion of the property could be used for, or diverted to any other cause than the advancement of the purposes of the Church named in the deed. It is also clear that if the grantees have such a title as would authorize them to "dispose of" it, it follows that they would have the legal authority to execute a valid mortgage on a portion of the property as a security for a loan so long as the proceeds of the mortgage were "used, kept, maintained and disposed of" for the use of the ministry and membership of the Methodist Episcopal Church South.

The fact that the "members" of a great church are named as beneficiaries does not cause indefiniteness, nor

affect it, so as to make the beneficiaries either private as opposed to charitable purposes. The "membership" of the Methodist Episcopal Church, South, may be ascertainable and to a certain degree definitely designated at any given time, and even conceding that the *cestui que* trust was not definitely stated in the deed, it cannot be said that the legal title did not pass to the trustees at the time of the execution of the deed; in fact indefiniteness and uncertainty as to the ultimate individual recipients are not by any means fatal to the validity of a charitable gift which in other respects is sufficient. 11 C. J. 339-340, Secs. 58-59. It is well established that a sole trustee under a private trust cannot at the same time be a beneficiary, but this rule does not apply to charitable or public trusts, where there are several trustees.

It follows from what has been said that it will not be necessary to discuss other points raised in this case.

Finding that the chancellor committed no error in sustaining the demurrer of defendants to the bill of complaint herein, the judgment of the Circuit Court of DeSoto county is hereby affirmed and it is so ordered.

Affirmed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and decreed by the Court that the order of the court below should be, and the same is hereby, affirmed.

TERRELL, C. J.; AND WHITFIELD, STRUM, BROWN AND BUFORD, J. J., concur.

ELLIS, J., concurs in the conclusion.