EZELL, BOYCE F., Jr. (Ret.), Associate Judge
(concurring in part and dissenting in part).
I concur with the majority opinion insofar as it affirms the trial court’s finding *49 that the Moorings Property Owners Association, an unincorporated association, owning no property whatever in the Moorings subdivision did not have standing to maintain the instant action. H. Trawick, Fla. Prac. & Proc. § 4-2 (1979 ed.); 24 Fla.Jur. Parties, § 7, p. 188; U. S. Steel Corp. v. Save Sand Key, Inc., 303 So.2d 9 (Fla.1974); Hemisphere Equity Realty Co., Inc. v. Key Biscayne Property Taxpayers Association, 369 So.2d 996, 1001 (Fla. 3d DCA 1979). However the majority opinion fails to resolve or treat the issue decided by the trial court that the appellees, Albert L. Wein-traub, et al., possess riparian rights to the artificial navigable waterway in Coconut Grove, Florida known as “The Moorings Canal”.
In 1925, Henry C. Shimp, the owner of a tract of land in Coconut Grove that abutted on Biscayne Bay, conveyed his property to his own corporation known as The Moorings, Inc. In that same year, The Moorings, Inc., platted the property, indicating that a canal and yacht basin were to be dug on the property. The work on the canal and basin commenced in March, 1926, and was completed in April, 1927. By deed dated April 19,1929, The Moorings, Inc., sold to Harriet Parsons James all of the land located on the north side of the canal. The legal description in the deed made no reference to riparian rights vis-a-vis the canal. The deed, however, granted to James
“all tenements, hereditaments and appurtenances, with every privilege, right, title, interest and estate reversion, remainder and easement thereto belonging or in anywise appertaining.” [Emphasis supplied.]
Following its conveyance to James, The Moorings, Inc., filed a revised plat of The Moorings, eliminating from the Moorings Subdivision the property that had been conveyed to James and dedicating the streets, avenues, ways, yacht basin and canal “to the free and perpetual use and enjoyment of the present or future owner or owners of any and all of the lots in the said ‘The Moorings’.” James was not a party to the revised plat. In January, 1930, James recorded a plat called Four-Way Lodge, which encompassed the lands conveyed by The Moorings, Inc., to her together with other lands owned by James. Appellees are the present owners of portions of the land conveyed by The Moorings, Inc., to James.[1]
Pursuant to appellant’s suit to enjoin ap-pellees from the riparian use of the navigable canal abutting their lots, the trial court ruled that the deed of conveyance from The Moorings, Inc., to James carried and conveyed riparian rights as such rights were not expressly excepted or reserved in the conveyance. Appellant’s prayer for injunc-tive relief was denied and he appealed.
A deed of conveyance to lands abutting a navigable waterway, containing no exclusion of riparian rights, effectively conveys riparian rights to the grantee. See, Florida East Coast Ry. Co. v. Worley, 49 Fla. 297, 38 So. 618 (1905); City of Eustis v. Firster, 113 So.2d 260 (Fla. 2d DCA 1959). The Moorings, Inc. undisputably conveyed property abutting a navigable waterway to James by a deed containing no reservation of riparian rights. In fact, the deed in question conveyed to James “... all ... appurtenances” attaching to the land. It is clear that riparian rights are part of the bundle of rights which are appurtenant to lands bordering navigable waterways. In Pike Rapids Power Co. v. Minneapolis, St. P. & S. S. M. R. Co., 99 F.2d 902, 908 (8th Cir. 1938), cert. denied, 305 U.S. 660, 59 S.Ct. 362, 83 L.Ed. 428, reh. denied, 306 U.S. 667, 59 S.Ct. 487, 83 L.Ed. 1062 cert. denied, 306 U.S. 640, 59 S.Ct. 488, 83 L.Ed. 1040 (1939), it was noted that
“. .. at common law the owner of land bordering on a navigable stream has certain exclusive rights to the use of the bed of the stream adjacent to his land and to the use of the water flowing thereover. Such rights are called riparian rights, and are said to he appurtenant to the title to *50 the abutting land. A deed conveying the fast land on the shore carries title to the appurtenant riparian rights.” [Emphasis supplied.]
This general proposition has been recognized in Florida. See, City of Eustis v. Firster, supra, at 261 (“. .. Riparian rights appurtenant to lands bounded by navigable waters are derived from the common law as modified by statute... ”).
Appellant claims, however, that riparian rights are not conveyed by virtue of a deed to land abutting an artificially created body of water, unless such rights are expressly granted. Appellant relies on cases dealing with the denial of public rights in artificially-created waterways. Appellees, however, are not claiming a public right of access to the canal at issue in this case, but rather are relying on their riparian rights as abutting landowners.[2]
Appellant’s reliance on Silver Blue Lake Apartments, Inc. v. Silver Blue Lake Home Owners Association, Inc., 245 So.2d 609 (Fla.1971), is totally misplaced. The developer of the artificial, non-navigable lake and abutting property in Silver Blue deeded the lake bottom by means of a deed containing a clause restricting the use of the lake to members of the Home Owners’ Association in return for the Association’s agreement not to contest the developer’s rezoning application. The court in that case properly determined that tenants of an apartment building abutting the lake could not have unrestricted use of the lake. The distinction between Silver Blue and the instant case could not be more apparent. Initially, it should be noted that the court in Silver Blue was dealing with a non-navigable, landlocked lake. Secondly, it is undisputed that the initial owner of the abutting land, on which the tenants resided, had subjected the land to a deed restriction in favor of the Home Owners’ Association. No restrictions existed in the deed to James in the instant case, nor can such restrictions be implied.
Appellant has cited several decisions recognizing distinctions between artificial and natural bodies of water, insofar as the application of riparian rights is concerned. Yet, no such distinctions have been drawn, nor could be drawn, as to navigable bodies of water, whether artificial or natural.[3]
It was within the power of The Moorings, Inc., to have excluded riparian rights to the canal in its deed to James, and its failure to do so vested James and her successors in title with said rights.[4]

. The evidence introduced in the lower court showed that a seawall was constructed along the banks of the canal on appellees’ property. We find no legal significance in the construction of this seawall as it affects appellees’ riparian rights.

. Moreover, it has been long recognized that, “Where owners of different parcels of land conduct water across the same in an artificial channel, and do not define their respective interests in the water, their reciprocal rights thereto are to be measured and determined as if they were riparian owners upon a natural stream.” Bollinger v. Henry, 375 S.W.2d 161, 166 (Mo.1964).
This principle is analogous to the case at bar. The Moorings, Inc.’s failure to specifically exclude riparian rights in its deed to James requires a determination of the parties’ rights in the canal as if the parties were riparian owners upon a natural water course.

. Appellees cite to § 197.228(1), Fla.Stat. (1979), which expressly provides that, “Riparian rights are those incident to land bordering upon navigable waters ... They are appurtenant to and are inseparable from the riparian land . .. Conveyance of title to or lease of the riparian land entitles the grantee to the riparian rights running therewith whether or not mentioned in the deed or lease of the upland.” Although I do not base my decision on the foregoing statute, I feel that it is an accurate codification of the common law.

.See, e.g., Montgomery v. Carlton, 99 Fla. 152, 162, 126 So. 135, 139 (1930), where it was noted that, “It is a general principle running through the law pertaining to the construction of deeds that they are to be construed most strongly against the grantor and most beneficially for the party to whom they are made...”