ALFRED S. BROWN, Appellant, *v.* JOHN A. QUINTARD et al., as Executors of PAUL S. BROWN, et al., Respondents, and HERBERT J. CARRINGTON et al., Appellants.

1. WILL — DEVISE BY IMPLICATION. A provision in the will of a testator who left four children him surviving and a son of a deceased child, giving his residuary estate to his executors in trust for certain purposes and directing the division of the residuary estate into four parts at

the expiration of the trust term, one of which was to be given to a son, with certain reductions to meet advancements to such son "in justice to my other children," but giving no directions as to the other three-fourth parts of the residuary estate, is not sufficient to create a devise by implication of the undevised three-fourth parts to the remaining three children, especially as it would result in the disinherison of the grandson, an heir at law.

2. EVIDENCE — FORMER WILL. In such a case a former will of the testator cannot be introduced in evidence to disclose the testator's intent. Extraneous and parol evidence is admissible only to explain a latent ambiguity arising *dehors* the instrument, but not to modify, contradict, enlarge or vary the written words.

3. SUSPENSION OF POWER OF ALIENATION. Where by the terms of a will the testator gave his residuary estate to his executors in trust to pay annuities to seven specified persons during the lives of such annuitants, or until the time fixed by the will for the final division of such residuary estate, which was for a period of twenty-six years, with power of sale in the executors to sell the real estate before that time if deemed for the best interests of the estate, and then failed to make disposition of all of the residuary estate, the trust is void as measured by more than two lives in being.

4. SAME. If the direction to hold for the term of twenty-six years was intended to be binding upon the executors and not advisory merely, the trust is also void as being measured by years and not by lives.

5. EFFECT OF FAILURE OF MAIN PART OF TRUST SCHEME. Where a trust has been created for the preservation of the residuary estate and the payment of the income therefrom to specified beneficiaries during the trust term, and no disposition is made of three-fourths part of the residuary estate, the whole trust and residuary plan is destroyed and no effect can be given to any part of it.

*Brown* v. *Quintard*, 79 App. Div. 635, modified.

(Argued December 1, 1903; decided December 18, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department entered March 17, 1903, which affirmed a judgment of Special Term construing the will of Paul S. Brown, deceased.

The facts, so far as material, are stated in the opinion.

*Francis A. McCloskey* for plaintiff, appellant. The provisions of the will whereby testator gives his residuary estate to his executors in trust to collect and receive the rents, issues

and profits thereof, and to apply the net income thereof to the
payment monthly of stated sums to seven designated bene-
ficiaries during their lives, and on their deaths to their several
heirs, are invalid for the reason that they unlawfully suspend
the absolute power of alienation of real estate and the absolute
ownership of personal property for more than two lives in
being. (*Colton* v. *Fox*, 67 N. Y. 348; *Ward* v. *Ward*, 105
N. Y. 68 ; *Hobson* v. *Hale*, 95 N. Y. 588; *Haynes* v. *Sher-*
*man*, 117 N. Y. 433; *Bindrum* v. *Ulrich*, 64 App. Div. 444;
*Ahern* v. *Ahern*, 52 App. Div. 356; *La Farge* v. *Brown*, 31,
App. Div. 542 ; *Almstadt* v. *Bendick*, 45 App. Div. 206.)
The provisions of the will whereby testator gives his residuary
estate to his executors in trust to collect and receive the rents
issues and profits thereof and to apply the net income thereof
to the payment monthly of stated sums to seven designated
beneficiaries until his estate is divided among his heirs, are
invalid, for the reason that the duration of said trust is not
limited by lives in being, but by a fixed period of years.
(*Greene* v. *Greene*, 125 N. Y. 508; *Staples* v. *Hawes*, 24 Misc.
Rep. 475; *Beekman* v. *Bonsor*, 23 N. Y. 298; *Rice* v.
*Barrett*, 102 N. Y. 163; *Kalish* v. *Kalish*, 166 N. Y. 368;
*Underwood* v. *Curtis*, 127 N. Y. 523; *Garvey* v. *McDevitt*,
72 N. Y. 556; *Haynes* v. *Sherman*, 117 N. Y. 433; *Dana* v.
*Murphy*, 122 N. Y. 604; *Ochletter* v. *Smith*, 41 N. Y. 328;
*Jennings* v. *Jennings*, 7 N. Y. 546.)

*Joseph Fettretch* and *Richard B. Kelly* for appellant Car-
rington.   It cannot be contended that there was any gift of
the three-fourths in question, and the appellant Carrington
cannot be disinherited by implication of law under the facts
as disclosed.   (*Lynes* v. *Townsend*, 33 N. Y. 561; *White* v.
*Howard*, 46 N. Y. 144; *Rupp* v. *Eberly*, 79 Penn. St. 141.)
Where a reasonable doubt exists as to the testator's intention,
a legacy by implication cannot be upheld, and especially is
this so where, as in this case, the rights of an heir at law are
involved.   (*Scott* v. *Guernsey*, 48 N. Y. 106; *Quinn* v.
*Hardenbrook*, 54 N. Y. 86 ; *Estate of Brown*, 93 N. Y. 295;

*Van Kleeck* v. *R. D. Church*, 6 Paige, 712; 20 Wend. 458;
*Matter of Manning*, 50 App. Div. 407; *Shangle* v. *Hallock*,
6 App. Div. 55; *Lynes* v. *Townsend*, 33 N. Y. 562; *Brad-
hurst* v. *Field*, 135 N. Y. 564; *Lockwood* v. *Mildeberger*, 159
N. Y. 182; *Post* v. *Hover*, 33 N. Y. 593.) So far as the
testator expressed himself, in terms, he provided in language
clear and unequivocal that his residuary estate should be
divided between his heirs at law. (*Montignani* v. *Blade*, 145
N. Y. 111; *Tillman* v. *Davis*, 95 N. Y. 17; *Bundy* v.
*Bundy*, 38 N. Y. 419; *Thurber* v. *Chambers*, 66 N. Y. 42;
*Smith* v. *Scholtz*, 68 N. Y. 59.) To deprive an heir at law
or distributee of what comes to him by operation of law, as
property not effectually disposed of by will, it is not sufficient
that the testator in his will has signified his intention that such
heir or distributee shall not inherit any part of his estate; but
to deprive such heir or distributee of his share of the property
which the law gives him in case of intestacy, the testator must
make a valid and effectual disposition thereof to some other
person. (*Lynes* v. *Townsend*, 33 N. Y. 561; *Haxton* v. *Corse*,
2 Barb. Ch. 506; *Coffman* v. *Coffman*, 85 Va. 459; *Cham-
berlain* v. *Taylor*, 105 N. Y. 185; *Jackson* v. *Schauber*, 7
Cow. 187; *Van Kleeck* v. *R. D. Church*, 6 Paige, 612.)
The court erred in receiving the prior will of 1899, which was
revoked by the will under construction. (*Bradhurst* v. *Field*,
135 N. Y. 564; *State ex rel.* v. *Crossly*, 69 Ind. 203; *Bingel*
v. *Volz*, 31 N. E. Rep. 13; *Kurtz* v. *Hibner*, 55 Ill. 514;
*Eckford* v. *Eckford*, 47 Alb. L. J. 36; *Tucker* v. *Society*, 7
Metc. 188; *Mann* v. *Mann*, 1 Johns. Ch. 231; *Jackson* v.
*Sill*, 11 Johns. 201; *Horton* v. *Thompson*, 3 Tenn. Ch. 581;
*Brewster* v. *Silence*, 8 N. Y. 213.)

*Louis J. Altkrug* for Augusta A. Brown, appellant. As
to three-fourths of the proceeds of his Manhattan real estate,
as to all of his personalty, as to the Brooklyn real estate, the
testator died intestate. (*Low* v. *Harmony*, 72 N. Y. 408;
*Matter of Brown*, 93 N. Y. 295; *Scott* v. *Guernsey*, 48 N. Y.
106.)

*Hugo Hirsh* for John A. Quintard et al., respondents. The power of alienation is not illegally suspended by this will. (*Robert* v. *Corning*, 89 N. Y. 225 ; *Henderson* v. *Henderson*, 113 N. Y. 1 ; *Allen* v. *Allen*, 149 N. Y. 288 ; *Haynes* v. *Sherman*, 117 N. Y. 433 ; *Matteson* v. *Palser*, 173 N. Y. 404.) The intention of the testator was that his residuary estate should be divided among his four children. (*Miller* v. *Coudert*, 36 Misc. Rep. 43 ; *Adams* v. *Cowen*, 177 U. S. 472 ; *Schult* v. *Moll*, 132 N. Y. 127 ; *Govin* v. *Metz*, 79 Hun, 461 ; *Walter* v. *Hain*, 68 App. Div. 381 ; *Matter of Verplank*, 91 N. Y. 443 ; *Smith* v. *Floyd*, 71 Hun, 56 ; *Phillips* v. *Davies*, 92 N. Y. 199 ; *Matter of Miner*, 146 N. Y. 130 ; *Starr* v. *Starr*, 132 N. Y. 158.) It was not reversible error to admit the former will in evidence. (*Matter of Miner*, 146 N. Y. 136.)

*Albert C. Wheeler* for Margaret Brown, respondent. The plain wish of the testator was that his son Edward S. Brown should take less than his other three sons, because of the advancements to him during the testator's lifetime, and a reversal of the testator's evident intention must not be read into the will by any technicalities of construction. (*Adams* v. *Cowen*, 177 U. S. 472 ; *U. T. Co.* v. *Owen*, 77 App. Div. 60.)

*Max E. Lehman* for Le Annah Brown, respondent.

WERNER, J. The purpose of this action is to obtain a judicial construction of the will of Paul Sandstrom Brown, who died, at the age of ninety years, on August 30th, 1901, seized of both real and personal property. In addition to his widow, he left him surviving, as his only heirs at law and next of kin, four sons, Mortimer, Edward, Alfred and Oscar, and a grandson, Herbert J. Carrington, the child of his deceased daughter. The will is dated June 21st, 1900, supplemented by a codicil dated August 15th, 1901. At the time of the testator's death he owned two pieces of real estate, one situated on Third avenue in the borough of Manhattan,

and the other on Tompkins place in the borough of Brooklyn, city of New York. He was also the owner of a leasehold estate in property situated on Third avenue adjoining the premises owned by him in fee.

The material parts of the will are as follows: The first clause directs the payment of debts and funeral expenses; the second disposes of all but $425.00 of the proceeds of a two thousand dollar life insurance policy by applying $1,000.00 of it on a mortgage, and giving specific portions of the remainder to various persons named; the third deals with household effects and personal property; the fourth gives to the executors in trust the residue of the estate, to collect and receive the rents, issues and profits, to apply the net income to the payment of annuities to each of the sons except the incompetent son Oscar, whose wife receives fifty dollars a month; and other annuities in specified sums to the wives of the sons Alfred and Mortimer, and the grandson Carrington. These annuities are directed to be paid " * * * until the death of the said parties, or until my estate shall be divided among my heirs as hereinafter provided, when all said payments shall cease and determine, except as hereinafter provided." The fifth paragraph provides for a ratable decrease in the annuities in the event of a diminution of income, and the sixth provides that if the income from the estate should increase $2,000.00 thereof should be first applied each year to the reduction of mortgages on the real estate, and then there should be a proportionate increase of the annuities above mentioned. The eighth paragraph gives to the executors power to renew mortgages on real estate and to rebuild in case of fire. The ninth paragraph gives to the executors full power " to sell at any time in their discretion any and all " of the testator's real estate, and then continues as follows: " But I advise that my real estate in the borough of Manhattan, city of New York, shall not be sold until twenty-six years from the date hereof, or until the termination by expiration of term or otherwise of a certain lease to Clarence S. Brown, now existing upon the premises No. 33 Third avenue, in said borough and city,

which said lease by its terms now runs to May 1st, 1905, with privilege to the lessee to renew the same for a period of twenty-one years at an increased rental to be agreed upon by the respective parties. Upon the expiration of said period of twenty-six years, or upon the termination of said lease at an earlier period, or at any time theretofore, if, in the judgment of my said executors, their successor or successors, it shall be deemed for the interest of my estate that said real estate shall be sold, it shall thereupon be sold and the proceeds divided in four equal parts. From one of said four parts my said executors, their successor or successors, shall deduct the sum of $3,000.00, and the said part so reduced shall be the part or share of my son Edward S. Brown; being so reduced in justice to my other children because of the money I have advanced to him. * * * And I direct my said executors, or their successor or successors, to pay to my son Edward S. Brown his share so reduced at the convenience of said executors; or in case of his death to invest the same for the benefit of his children." In the same paragraph the $3,000.00 which was deducted from the share of Edward was bequeathed to the testator's two grandsons Herbert J. Carrington and Clarence Brown; $2,000.00 to the former, and $1,000.00 to the latter. The codicil reduced the amount to be deducted from the share of Edward to $1,000.00 and this was bequeathed to the two grandsons in the same proportions as the $3,000.00 mentioned in the ninth paragraph of the original will.

In the tenth paragraph the executors were given power to sell the Tompkins place real estate at any time in their discretion at either public or private sale, and "to invest the balance coming from said sale in such manner as in their judgment will be most secure and give the largest attainable income," but there was no direction as to the disposition of the proceeds of such sale.

The eleventh clause again gives to the executors the power to sell the real estate at public or private sale, but in the latter event only with the approval of a majority of the testator's

adult heirs then living, as to the amount for which such sale shall be made.

The fundamental difficulty with this will lies in the failure of the testator to make any direct or explicit disposition of three-fourths of his residuary estate. It will be noted that in the ninth paragraph he directs the division of his estate into four parts. One of these parts, less three thousand dollars, he gives to his son Edward. The other three parts are not disposed of unless, by implication, we can import into the will language that gives the other three parts to the testator's sons Mortimer, Oscar and Alfred. Such an implication will save from collapse the essential features of this testamentary scheme. Without such implication there is no testamentary disposition of the residuum of the estate, unless the trust set forth in paragraph four, and the alleged trust in paragraph nine, are valid. The trust in paragraph four is to pay the annuities therein specified to the several annuitants named during their respective lives, or until the estate shall be divided " among my heirs as hereinafter provided." If there is no complete and valid disposition of the estate " as hereinafter provided " it follows that the trust must stand, if at all, upon the provision to pay the annuities during the lives of the respective annuitants, and this is clearly invalid, because it suspends the power of alienation of property or its proceeds for more than two lives in being. Under paragraph four, no less than seven lives intervene between the death of the testator and the ultimate disposition of the estate, unless subsequent parts of the will validly provide for an earlier division. As to the alleged trust, which is predicated upon the provisions of paragraph nine, as read in connection with paragraph four, it is enough to say that if the direction not to sell the Third Avenue real estate until after the expiration of twenty-six years is anything more than mere advice, it is void, because it attempts to create a trust measured by years and not by lives.

Thus we come to the real question in the case. Can the ninth clause be so read as to dispose of the whole of the resi-

due of the estate? The learned trial court and counsel for the executors evidently thought that it could not be so read, or, at least, entertained doubts upon the subject, as is shown by the use of a former will of the testator as evidence to disclose the latter's testamentary intent in making his last will.

We think it was error to receive the revoked will in evidence for that purpose. Extraneous and parol evidence is admissible to explain a will when there is a latent ambiguity arising *dehors* the instrument, but never to supply, contradict, enlarge or vary the written words. (*Mann* v. *Mann*, 1 Johns. Ch. 231, and cases there cited.) The reason for this rule is obvious. The courts cannot be permitted to construct wills from the materials which testators have discarded. A will is never revoked unless the testator changes his mind respecting the disposition of his estate. When a will is revoked it no longer expresses the testamentary intention of its maker. To the extent that the provisions of two wills of the same testator are identical there is, of course, no necessity for explanation. But when they are different the last must speak for itself. If this were not so a testator could never safely change or revoke his will. In the case at bar the former will was received to show that it contained provisions which were inadvertently omitted from the last will. If the two wills could be read together the conclusion would be obvious. But the testator's last will must be read and construed by itself in the effort to ascertain his intent. When thus read and construed no court can say that the omissions in the last will were inadvertent. *Non constat* that may have been the very purpose of revoking the former will and making another. The introduction of the former will was properly objected to, and there was an exception to the ruling receiving it. The error is not one which we can disregard, for we cannot say that it did not prejudice the substantial rights of the appellants, and it follows that there must be a reversal of the judgment. It is necessary, however, to go a step further in the discussion. The construction and effect of paragraph nine must be determined. This is a feature of the case that cannot be changed

by any number of new trials and we, therefore, dispose of it now.

In so far as the testator has given expression to his plan or scheme of testamentary disposition, it is plain. The executors were vested with the legal title to the residue of the estate to pay the annuities during the lives of the respective annuitants, or until there should be a division as provided. The only division directed to be made is that there shall be four parts, of which the son Edward shall receive one, less the deduction specified in the codicil. The other three parts are not disposed of. It is true that the testator had four sons, and that the direction to divide the residue into four parts is coupled with the statement that the deduction from Edward's share is made " in justice to my other children." These circumstances give rise to surmise, conjecture and argument, but they prove nothing except the fact that if the testator intended to give three-fourths of the residue to his sons Mortimer, Alfred and Oscar, he utterly failed to do so. If we were dealing with this case alone, and not with the law relating to wills, we might, in the interests of justice, permit probabilities to outweigh proofs, but the law must be upheld.

There has been no direct and explicit disposition of three-fourths of the residue, and the language of the will is not such as to support a disposition by implication. A few extracts from the reported decisions will serve to illustrate the inflexibility of the rule by which this case must be governed.

" To uphold a legacy by implication, the inference from the will of the testator's intention must be such as to leave no hesitation in the mind of the court and permit of no other reasonable inference." (*Bradhurst* v. *Field*, 135 N. Y. 564.) " To devise an estate by implication there must be so strong a probability of such an intention that the contrary cannot be supposed." (*Post* v. *Hover*, 33 N. Y. 594.) " Especially is this true when the implication sought to be drawn will result in the disinherison of an heir." (*Scott* v. *Guernsey*, 48 N. Y. 106.) " The rule is peremptory that the heirs shall not be disinherited unless by plain and cogent inference arising from

the will." (*Quinn* v. *Hardenbrook*, 54 N. Y. 83; *Lynes* v. *Townsend*, 33 N. Y. 558.)

The conclusion that the testator failed to dispose of three-fourths of his residuary estate necessarily leads to the result that he must be held to have died intestate as to the whole of the residue. In the failure of the residuary disposition to the extent of three-fourths, the real substance of the whole residuary scheme failed. The trust or trusts were created for the purpose of paying the annuities and then making division as directed, which was only as to one-fourth. Without a valid disposition of the other three-fourths, and without a valid trust, the whole residuary plan is destroyed, and there would be neither logic nor justice in holding that, despite this result, the son Edward may yet take under the will and then share with his brothers under the Statute of Distributions. "A portion of a will should not be upheld when the result will work injustice to those interested." (*Benedict* v. *Webb*, 98 N. Y. 460.) "Where a trust is a part of a single scheme, the principal object of which cannot be carried out, the whole scheme falls, and no effect can be given to any part of it." (*Holmes* v. *Mead*, 52 N. Y. 332; *Benedict* v. *Webb*, 98 N. Y. 460; *Rice* v. *Barrett*, 102 N. Y. 161; *Matter of Butterfield*, 133 N. Y. 473.)

Those provisions of the will that are not a part of the residuary scheme are not affected by this decision. They are distinct and separable. Those that form an integral and essential part of the residuary plan must fall together.

The judgment of the court below must be modified as above indicated, and as thus modified affirmed, with costs to all the appellants and to the executors, respondent, payable out of the fund.

Parker, Ch. J., Gray, Bartlett, Martin and Cullen, JJ., concur; O'Brien, J., dissents.

Judgment accordingly.