In the Matter of the Estate of JOHN W. BARRETT, Deceased. CITY BANK FARMERS TRUST COMPANY, as Executor of MABEL A. BARRETT, Deceased, and as Executor and Trustee under the Will of JOHN W. BARRETT, Deceased, Appellant-Respondent; RUTHERFORD TRUST COMPANY, as Trustee under the Will of WILLIAM MITCHELL BARRETT, Deceased, Respondent; CARLETON S. COOKE, as Executor and Trustee under the Will of WILLIAM MITCHELL BARRETT, Deceased, Respondent-Appellant, and LESTER J. NOLF, Individually and as Executor of WILLIAM WILSON BARRETT, Deceased, Respondent-Appellant.

First Department, June 28, 1955.

*Edwin W. Cooney* of counsel (*Pauline B. Taylor* with him on the brief; *Mitchell, Capron, Marsh, Angulo & Cooney,* attorneys), for City Bank Farmers Trust Company, as executor and trustee, appellant-respondent.

*Harrison F. Durand* of counsel (*Charles L. Herterich* and *Robert D. Taisey* with him on the brief; *Davies, Hardy & Schenck,* attorneys), for Lester J. Nolf, individually and as executor, respondent-appellant.

*Philip C. Scott* of counsel (*Leonard Joseph* with him on the brief; *Dewey, Ballantine, Bushby, Palmer & Wood,* attorneys), for Rutherford Trust Company, respondent, appearing specially.

*Frederick W. P. Lorenzen* of counsel (*Joanna H. Maxwell* with him on the brief; *Dwight, Royall, Harris, Koegel & Caskey,* attorneys), for Carleton S. Cooke, as executor and trustee, respondent-appellant.

RABIN, J. This proceeding arises out of dispositions made by and under the last will and testament of John W. Barrett ("John"). He died on February 1, 1934, a resident of New York, and appointed City Bank Farmers Trust Company, the petitioner here, and his wife Mabel as executors and testamentary trustees. Mabel died on May 23, 1942, and petitioner is here as the surviving executor of her estate as well as surviving executor and trustee of John's.

John, by his will, established a trust of two-fifths of his residuary estate for the life of his brother, Mitchell, with a testamentary power of appointment to the latter.

Mitchell died on January 25, 1938, a resident of New Jersey, and by his will disposed of his residuary estate, "including therein the property formerly of my deceased brother," by creating two trusts: the income of three-fifths of his residuary estate to his wife Mary for her life and then to his son Wilson for his life, with a testamentary power of appointment to Wilson; the income of two-fifths of his residuary estate to Wilson for life and then to Mary for life if she survived Wilson, again with a testamentary power of appointment to Wilson. The Rutherford Trust Company, a New Jersey corporation, was a trustee,

and Carleton S. Cooke ("Cooke"), a New York resident, the executor and the other trustee named by Mitchell. By decree of the Surrogate's Court, New York County, dated December 23, 1938, distribution of the appointive property to Rutherford Trust Company and Cooke, pursuant to Mitchell's directions, was ordered. Neither the Rutherford Trust Company nor Cooke was required to, or did qualify as trustees in New York in connection with the distribution as aforesaid.

Mary and Wilson died on September 30, 1941, and July 15, 1952, respectively. By his will, Wilson bequeathed his residuary estate, including the appointive property, to one Lester J. Nolf ("Nolf"), whom Wilson likewise named as executor of his estate.

This proceeding was initiated by petitioner City Bank Farmers Trust Company, as executor and trustee under the will of John, and as executor of the will of Mabel, for a compulsory accounting pursuant to section 259 of the Surrogate's Court Act, by the Rutherford Trust Company and Cooke as trustees under Mitchell's will. Such accounting was demanded because of the alleged invalidity under section 11 of the Personal Property Law of Mitchell's exercise of his power. Cooke was served personally; the Rutherford Trust Company personally, by mail, and by service upon the clerk of the Surrogate's Court of this county pursuant to certain limited designations previously executed and filed by the Rutherford Trust Company as Mitchell's trustee in proceedings not those here described. A motion by the Rutherford Trust Company to vacate the service on it was granted by the Surrogate; a similar motion by Cooke was denied; and appeals from both these determinations were taken.

Upon Cooke's answer, wherein the validity of Mitchell's exercise of his power of appointment was contended for, the petitioner filed a supplemental petition and reply praying for a construction of John's will as enlarged by Mitchell's last will and testament to determine the issues of construction raised by Cooke's answer. A supplemental citation issued, and was served upon Nolf who moved to dismiss the petitions, alleging lack of jurisdiction over the subject matter, and answered, asserting as affirmative defenses *res judicata* by reason of the 1938 decree, estoppel, and laches. Nolf's motion was denied; his defenses were "dismissed" by the Surrogate, and Nolf has appealed these determinations.

The Surrogate decided the construction issues raised, and found that the direction by Mitchell was invalid to the extent that in each of the trusts he established the appointive property

■■■■■■■■■■■■

was continued in trust for more than one life. He held that three-fifths of the appointive property became distributable upon the death of Mary as intestate property of John, while the other two-fifths was timely and validly disposed of by Mitchell. From various aspects of these determinations, and from the consonant order that Cooke account, petitioner, Cooke and Nolf all appeal.

We think the Surrogate was in error in not deeming the 1938 decree dispositive of the issues of construction raised.

On November 18, 1938, petitioner and Mabel, as executors and testamentary trustees under the will of John, petitioned the Surrogate's Court of New York County for a decree approving their final account and directing final distribution of the residuary estate to the executor and trustees of the will of Mitchell appointed by the New Jersey Chancery Court. The petition set forth the provisions of John's will creating the trust and the provisions of Mitchell's will exercising the power of appointment. Among those cited was Mabel in her individual capacity, in which capacity she appeared in the proceeding. The Rutherford Trust Company and Cooke were likewise cited and appeared.

The present record sufficiently establishes that Mabel was apprised of the fact that the exercise of the power of appointment by Mitchell might be invalid. For the accounting executed by both Mabel and petitioner, in Schedule I thereof, stated that Mabel, as a distributee of John, may claim one half, approximately $170,000, of the appointive property. It further appears that after negotiations between counsel for Mabel and counsel for the Rutherford Trust Company and Cooke over a period of months, Mabel withdrew her claim and consented to the entry of a decree. Thereupon the decree was made by Surrogate Foley on December 23, 1938, and the trust fund was transferred to the New Jersey trustees and under the terms of Mitchell's will has since been in the custody of the Rutherford Trust Company. The finality of that decree is attested to by the ordering of paying out commissions, and the absence of any provision for reserving jurisdiction either over the future administration of the appointive property or the trustees named by Mitchell.

Accordingly, all those now challenging the 1938 decree were represented in the earlier proceeding and, indeed, initiated it. (Cf. *Krause* v. *Krause*, 282 N. Y. 355, and *Starbuck* v. *Starbuck*, 173 N. Y. 503.) Concededly at the time of that proceeding the invalid disposition now complained of was as extant and vulnerable as now; concededly, moreover, the parties who presently

seek to set aside the disposition were cognizant of its amenability to attack, and knowingly and purposefully decided to forego any attack on that score and to consent to the decree (cf. *Matter of Wade,* 296 N. Y. 244; *Gill* v. *Brouwer,* 37 N. Y. 549, and *Matter of Basch,* 130 N. Y. S. 2d 471, affd. 284 App. Div. 957). As that decree finally ordered precisely that distribution now urged as bad, the decree necessarily embraced and therefore determined the issue of the validity of the distribution (Surrogate's Court Act, § 80). Notwithstanding that the decree was uttered upon the occasion of an accounting, rather than a construction under section 145 of the Surrogate's Court Act, its purpose and end was distribution, and the inherent integrity of such a decree would be improperly derogated if it did not, at a minimum, import the legality of the distribution ordered, no matter the effect of the decree on other issues of construction and interpretation.

*Matter of Wade* (296 N. Y. 244, *supra*) in its essential features, squarely governs this case. There the will set up a trust of $500,000 with the net income to be paid to the testator's wife during her life, and upon her death the principal was to become part of the residuary estate and be divided into three separate trusts for each of testator's three children with remainders to their appointees by will or to descendants. On an accounting by the executors, a compromise agreement was executed by all parties in interest, including special guardians for the infant contingent remaindermen. The agreement provided that the trust fund of $500,000 should be reduced to $400,000, consisting of specified securities and money. By a decree dated January 14, 1937, the agreement was approved by the Surrogate and the executors were directed to deliver securities and moneys in that amount to the trustee. In 1942, upon an intermediate accounting by the trustee, the widow and the infant contingent remaindermen represented by a special guardian contended that the 1937 decree was void because it violated section 103 of the Real Property Law and section 15 of the Personal Property Law, prohibiting transfers by assignment or otherwise of the right of a beneficiary to receive the income of a trust. The Court of Appeals held that although the compromise agreement did violate the stated sections, nevertheless the decree approving the agreement was a conclusive adjudication of the validity thereof, and since all parties in interest had consented thereto and no appeal was taken the decree was not open to attack.

The 1938 decree is, therefore, here binding, notwithstanding the absence therein of any specific and express adjudication of

the issues of invalidity here raised (*Thorn* v. *De Breteuil,* 179 N. Y. 64; see, also, *Reich* v. *Cochran,* 151 N. Y. 122, and *Pray* v. *Hegeman,* 98 N. Y. 351).

On the appeal of Nolf (individually and as executor), the order should be reversed and vacated, and the motion to dismiss the petition and supplemental petition granted. As a consequence, the appeals from the Surrogate's construction of the wills are dismissed.

PECK, P. J., COHN, CALLAHAN and BREITEL, JJ., concur.

On the appeal of Nolf the order is unanimously reversed and vacated and the motion to dismiss the petition and supplemental petition granted. As a consequence, the appeals from the Surrogate's construction of the wills are dismissed. Settle orders on notice.