S. Samuel Di Falco, S.
In a proceeding instituted under section 206-a of the Surrogate’s Court Act to recover United States Savings Bonds in the face amount of $68,000, the executors filed a cross petition for a construction of paragraphs seventh and eighth of the will. The bonds which were the subject of the petition, were delivered to the petitioner pursuant to a written stipulation executed during the course of the proceeding, thus leaving for decision only the questions of construction proposed by the executors.
Paragraph seventh of the will reads: “ I have United States Government Bonds in my name in trust for Joseph Mastrandrea, Joseph E. Musantry and Joseph E. Constantine, Jr. All these bonds, I give and bequeath to my son, Joseph E. Constantine, Jr. if dead, to his children.”
It is conceded that the three names refer to one person. Born Joseph Mastrandrea, he had also been known as Joseph E. Musantry, and his name was later changed by court order to Joseph E. Constantine, Jr. The decedent indicated to his attorney that this beneficiary was his son. The decedent held United States Bonds in the face amount of $68,000, which were registered in his name, payable on his death to Joseph E. Musantry (which have now been delivered to petitioner.) He also owned other United States Bonds in the aggregate amount of $157,000, of which bonds worth $152,000 were registered in the sole name of the decedent and bonds having a face value of $5,000 were in bearer form. The petitioner contends that all of these bonds are the subject of the legacy in paragraph seventh of the will, and that he is entitled to all of them. In construing the will, he would insert a comma after the words “ my name ”, giving it the meaning of “ and ”, so that the text would read: “ I have United States Government Bonds in my name [, and] in trust for Joseph * * * All these bonds I give and bequeath to my son, Joseph * * On the other hand, the executors and one residuary legatee, reading the will against the background of prior instruments and the history of the bond purchases, believe that the legacy is confined to the $68,000 in bonds already delivered to the petitioner.
Even on its face the text of the seventh paragraph of the will gives warning of difficulty in executing the gift. United States Savings Bonds, unlike savings bank accounts (Banking Law, § 239, subd. 2), are not registrable in what is known in *713 this State as the Totten Trust form (IT. S. Treasury Dept. Circular No. 530, § 315.7). It is possible to register certain bonds in the name of a trustee “ of a single duly constituted trust estate,” with adequate identifying reference to the trust instrument or other authority creating the trust (id., § 315.7, subd. (b), par. 1 [iii]). The will now under construction indicates a registration in a trust form but with no actual trust. However, the real problem arises when we turn from the text of the will and endeavor to identify the particular subject matter of the gift. Even if it were possible to have bonds registered in such a manner as the will describes, the fact is that this decedent never at any time had any bonds at all registered in his name as trustee. He did own a very substantial block of United States Bonds registered in his own name and a large number registered in what is known as “ beneficiary form,” with Joseph Musantry as “ the beneficiary.” (U. S. Treasury Dept. Circular No. 530, § 315.7, subd. a, 3.) In the absence of property corresponding with the description in the will, the respective parties disagree as to the particular bonds intended to be embraced within this gift. It is, therefore, apparent that there is a latent ambiguity in the will, and that resort may be had to such extrinsic evidence as sheds light upon the decedent’s intent.and purpose.
The decedent made two wills prior to the date of the one admitted to probate. The two earlier wills were admitted in evidence at the hearing upon consent of all parties. Although resort to earlier and revoked wills is never permissible for the purpose of supplying, contradicting, enlarging or varying the written words of the last will (Brown v. Quintard, 177 N. Y. 75, 83), they may properly be considered for whatever aid they might offer in identifying the subject of the gift when the last will is ambiguous in that respect (4 Page, Wills [Bowe-Parker Rev.], pp. 274-275). There was also received in evidence, over the objection of the respondent, the instructions of the decedent to the draftsman of the earliest will. There being a latent ambiguity in respect of the subject matter of the gift, the testimony of the draftsman and the instructions of the decedent are admissible in evidence (Bauman v. Steingester, 213 N. Y. 328; Matter of Morrison, 270 App. Div. 318, 320; Matter of Coughlin, 171 App. Div. 662, affd. 220 N. Y. 681; Matter of Tinker, 157 Misc. 200, 203-205; Matter of Menick, 124 N. Y. S. 2d 573, 576).
Prior to the execution of a will on October 16, 1954, the decedent gave his attorney handwritten instructions for the preparation of that will. Insofar as material here, the instructions read: “ all U. S. E. Bonds or other U. S. Bonds that have the *714 name of Joseph E. Mastandrea or Joseph E. Musantry are to be put in Trust Fund — with Manufacturers Trust Co.— These bonds are to be cashed — as needed for his expenses & college education — the balance to become his property when he is 28 years old.” At this point of time the decedent held bonds in the face amount of $66,000 which were registered in his name, payable on his death to Joseph. He had no other bonds in which Joseph’s name appeared in any other way. The will which the attorney prepared and the decedent executed read: “I have accumulated some United States Government Bonds, which while in my name in trust for Joseph E. Mastrandrea [sic] or Joseph E. Musantry have never left my possession. They are mine. All these bonds (in whatever manner inscribed), I give and bequeath to my trustees, in trust with directions that not more than $3,000 of the principal and proceeds be paid to Joseph E. Musantry in any one year, until he is 28 years old when the balance be paid to him. ’ ’ Other provisions cover the contingency of his death during the trust term. It will be noted that this text clearly relates only to bonds in which Joseph had a beneficial interest. The draftsman of the will never saw the bonds. He was using the words ‘£ in trust ” in a very loose sense. The words, “in whatever manner inscribed ”, related to “these bonds ”, that is, those in which Joseph had a beneficial interest. These words might have been intended to refer to the two different names which Joseph was accustomed to use, or, perhaps, they were intended to cover the various forms of registration in which two names can be placed upon United States Savings Bonds. The decedent’s written instructions are more clear in this respect than the terms of the will. He speaks only of the bonds which have Joseph’s name upon them. There can be no doubt whatever of his meaning. Thus the one thing that is perfectly clear in these earlier papers is that the words ‘1 in whatever manner inscribed ”, were not intended to cover bonds inscribed in the sole name of the decedent or in bearer form but only those in which Joseph’s name appeared as having some kind of beneficial interest.
At the date of this will Joseph was just past the age of 22 years. The decedent had been purchasing United States Bonds every year beginning with the year 1941. Between 1941 and 1950 the purchases were in the face amount of $42,000, all of which were in his name, “ payable on death ” to Joseph except for $5,000 which were in bearer form. Between 1950 and the end of the year 1953, the purchases were in the total face amount of $61,000, of which $32,000 were in the sole name of the decedent and $29,000 were payable on his death to Joseph. *715 During the year 1954 (the year in which he made this will) all bonds purchased by the decedent (in the amount of $25,000) were in his sole name. Beginning with the year 1955 and continuing through 1960, he purchased bonds in the total face amount of $99,000, all of which were in his sole name except $2,000 which was payable on his death to Joseph and $2,000 payable on his death to another person (which are not in any way involved here). Thus when he made the will in 1954, most of the bonds were made payable on his death to Joseph, but a substantial amount ($49,000 if we exclude all purchases made in October, 1954) were in his sole name or in bearer form.
The decedent made a later will on April 27, 1960. Joseph attained the age of 28 years on July 31, 1960. The text of this will is not very different from the earlier one. It said: “ I have United States Government Bonds, in my name in trust for Joseph * * *. All these bonds (in whatever manner inscribed) I give and bequeath to my trustees * * The earlier will had placed a ceiling of $3,000 on the annual payments while the later one directed payment of that sum annually. Both provided for payment to Joseph at age 28 (which was about three months from the date of that will). At the time of making the second will, the bonds in which Joseph was beneficiary were precisely the same as when the first will was executed, while those in the decedent’s sole name or in bearer form had increased to $148,000.
Returning to the last will of the decedent, it has become patent that there is no justification whatever for reading into it any insertions, additions, or alterations. The decedent’s intent and purpose become clear when, in the light of all of the decedent’s bond purchases and holdings, we read the text as it is written. Obviously the decedent misunderstood the legal effect of registration of bonds in beneficiary form. He thought that he could direct their continuance in trust. His draftsman evidently assumed that if the bonds were to be continued in trust, they must have been registered in some trust form, and he failed to ascertain the precise form of registration. It matters not whether the decedent could lawfully accomplish the purpose that he had in mind originally, or whether bonds in beneficiary form would vest in the beneficiary regardless of the terms of the will. We are seeking the decedent’s purpose and intent, without regard to whether it could be effected or not. True, if two different meanings could fairly be drawn from the words, we would be bound to choose that which would be legal and effective over that which would be abortive. Here, however, there is no possibility of reading the text to cover the *716 bonds registered in the sole name of the decedent. To do that we would have to insert additional words in the text. There is no basis for such modification. When we road the text in the light of the earlier instruments, there is even greater certainty that the suggested alteration of the text would be in truth an alteration of the decedent’s design and purpose.
The petitioner, Joseph Constantine, Jr., offered his wife as a witness to conversations with the decedent in which he is said to have stated that Joseph would receive bonds worth $200,000. The exact dates of the conversations are not stated. The first appears to have occurred prior to the last will. The decedent is quoted as having said ‘ ‘ I have bonds in your name, they are worth over $200,000, and they are for you and they are not to be used now at anytime.” The second conversation, which also appears to have preceded the last will, was allegedly to the effect that the decedent would pay off a certain mortgage but that if anything should happen to him before he could do so, “ he [Joseph, Jr.] had nothing to worry about, that the $200,000 was in his name in bonds and they would take care of him.” In a later conversation the decedent is reported to have told Joseph: “ You have $200,000 in bonds in your name.” Wholly aside from the question of the admissibility of such evidence, it is apparent that these alleged declarations do not shed any light on the portion of the will now being construed. The declarations relate to the form of registration of the bonds and not to any testamentary gift. The decedent is said to have represented all of the bonds as being in Joseph’s name. Those declarations, if made, are contrary to the fact. The history of the bond purchases shows that the decedent knew how to register bonds in his sole name and how to include the name of a beneficiary. It is possible, as respondents point out, that the decedent might very well have used the figure $200,000 as approximately the sum that Joseph might receive as specific legatee and residuary legatee. In any event, the alleged declarations cannot be considered as shedding any light on the provision in question.
The court, therefore, holds that paragraph seventh of the will encompasses only the bonds on which the name of Joseph Musantry (now Constantine) is inscribed as payee on the death of the decedent.
The eighth paragraph of the will disposed of the residuary estate in the familiar text, directing its division, in equal shares, among Joseph Constantine, Jr., and the three children of the decedent’s sister, namely, Helen Bose, Felix Alfenito and Dr. *717 Joseph 0. C. Alfenito. There are alternative provisions for distribution in the event that any of them be dead at the time of distribution. The paragraph closes with the following sentence: ‘ ‘ I make no provision for my beloved nephews, Felix and J oseph, because I have already helped provide them with an education and they have otherwise been ampley [sic] provided for by me.” There is no doubt that the names “ Felix and Joseph ” refer to the two nephews, to each of whom is bequeathed one fourth of the quite substantial residuary estate. Joseph Constantine, Jr., contends that the quoted text effects a revocation of the residuary gift to the two nephews and that the residue is to be equally divided between him and the named niece.
The 1954 will had created a trust of the residuary estate for the primary life use of the decedent’s sister. At her death, one half of the remainder was to be paid to her daughter, Helen Bose, and the other half was to be divided among her two sons, Felix and Joseph, with the proviso that if any be dead their respective shares would pass to their issue, or in default of issue, would be divided among the others. That will contained text explaining why 11 no provision ’ ’ had been made for the two nephews. The explanation is understandable in that context because the two nephews were given simply an interest as contingent remaindermen of a trust. The decedent obviously meant that he had made “ no other provision ” for them, that is, no provision other than as possible takers of the trust remainder. The 1960 will continued the residuary trust for the decedent’s sister but divided the remainder among the four persons named in the last will, that is, the niece, the two nephews and the decedent’s son. Here, too, the remainders were contingent upon the beneficiaries surviving the trust term, and the same text relating to Felix and Joseph was retained.
In his last will the decedent abandoned the idea of the residuary trust and eliminated his sister as a beneficiary of the residue. He directed that the entire residue be divided equally among the four named relatives, including his two nephews, Felix and J oseph. He continued, without any change, the text explaining the reason for making ‘ ‘ no provision ’ ’ for Felix and Joseph. It is apparent that in the use of this text he did not intend to cut down the gift of a share of the residue which he had bequeathed to them in clear and certain terms. Here, as in the other wills, all that he meant was that he was making no ‘ ‘ other ’ ’ provision for them. In view of the elimination of the trust and of the contingent nature of the gift to them, there was no reason for the continuance of the provision used in the earlier will. *718 It is patent, however, that the testator never intended by this text to cut down the gift which had been made to them in clear and unmistakable words. The court, therefore, holds that the residuary estate is to be divided equally among the four named persons.