Edward S. Silver, J.
This proceeding was originally commenced by the son of Clara M. Benson, now deceased, who was testator’s niece and one of his two distributees, for a construction that the charitable trust created under paragraph Tenth of testator’s will is invalid. The special guardian for testator’s half-sister,.who was testator’s other distributee, takes a similar position. Both distributees and four other persons were given lifetime specified annual legacies under the will and codicil.
Thereafter the said son, who is a residuary legatee under his mother’s will and one of her coexecutors, in his representative capacity, and his mother’s other coexecutor made themselves parties to this proceeding by adopting, amending and supplementing the original petition. The conservator appointed for testator’s half-sister, by a separate instrument *1017 adopted the petition and the amended and supplemental petition herein.
The special guardian urges that a hearing he held to ascertain the facts surrounding the execution of an agreement dated December 12, 1936 by and among his ward, Clara M. Benson, the nominated corporate executor, and the Attorney-General of the State of New York. Under said agreement the objections to probate of the testator’s will and codicil, which had been interposed by testator’s half-sister, were withdrawn, conditioned upon the payment of a substantial sum of money to each distributee, in addition to the benefits given to each of them under the will.
The corporate trustee, which has executed and administered the trust for almost 30 years, has interposed an answer alleging, said agreement as a defense and, inter alia, that the petition fails to set forth sufficient facts to constitute a cause of action and moves for its dismissal. The petitioners have moved for an order striking out the defenses, granting summary judgment pursuant to CPLB, 3212 and for leave to take the oral depositions of the corporate executor-trustee, the Attorney-Ureneral, and their agents or employees having knowledge of the facts at the time the December 12, 1936 agreement was executed.
The testator died on October 23,1936 leaving a will dated May 22, 1930 and a codicil thereto dated October 8, 1936, which were duly admitted to probate in this court on December 21, 1936. The pertinent provisions of the will at issue are, in part, as follows:
‘1 fourth : I give and bequeath annuities to the persons and in the amounts hereinafter named and direct my executor and trustee to pay the same out of the income of my residuary estate devised and bequeathed in trust by paragraph hereof numbered ‘ tenth ’ at such periodical times as the annuitants shall request, hereby intending to make said annuities a first charge upon the Trust Fund aforesaid and to create legal and not merely equitable estates therein, vis.
“ (a) To my niece, clara m. benson, the sum of Twelve thousand Dollars ($12,000) annually for and during her life”. (Emphasis supplied.)
Paragraph Tenth provides in part, as follows: ‘ ‘ tenth : The rest, residue and remainder of my estate, real and personal and wheresoever situate, I give, devise and bequeath * * * in trust * * * to apply the net income remaining after payment of the annuities * * * and after the death or marriage of all of said annuitants to apply the whole of the net income to the use of such religious and charitable corporations *1018 organized within the United States and operated exclusively for religious and charitable purposes ” * * *
“Nor shall the trust be restricted to the distribution of income only. My trustee shall have, and I hereby give and grant.unto it, subject to the charge of the annuities aforesaid, full power and authority not only to apply the income of the trust but to transfer and pay over the principal thereof, in whole or in part, at any time and from time to time * * * to such * * * charitable corporations as it shall select ”. (Emphasis supplied.) By his codicil to the will, the testator increased the amounts - payable to one of the legatees under paragraph Fourth of the will and provided a legacy for his half-sister under paragraph First of the codicil, as follows: “ first: I give and bequeath .to my half-sister maud wiltbank * * * an annuity in the sum of five thousand dollars ($5,000.) and direct my executor and trustee to pay the said sum * * * annually * * * hereby intending to make said annuity a charge upon the trust fund aforesaid, and to create a legal and not merely an equitable estate therein.” (Emphasis supplied.)
The agreement of December 12, 1936 withdrew objections to probate of the will, and recited that objections had been filed by Mrs. Wiltbank, testator’s half-sister; that Mrs. Benson was dissatisfied with the provisions made for her by said will and had considered filing objections; and contains the following provisions: “whereas, said alleged last will and testament created a trust for charitable and religious uses * * * and * * * is of the nature defined by Section 12 of the Personal Property Law and by Section 113 of the Real Property Law of the State of New York, and the beneficiaries thereof are, by reason of the provisions of said statutes, represented by the Attorney General of the State of New York * * * and * * * that the interests of justice * * * would be best served by a compromise of the will contest and by final discharge, upon the terms hereinafter set forth, of all rights, claims and demands of every name and nature which Mrs. Wilt-bank and Mrs. Benson, or either of them, as heirs at law, next of kin and distributees or otherwise, may now have or hereafter have in and to or against the estate of said Frank E. Clark, deceased, for any reason or cause whatsoever * * *.
“fifth Mrs. Wiltbank and Mrs. Benson severally agree with the other parties to this agreement that the provisions of the last will and testament and first codicil thereto aforesaid are in all respects valid and enforceable, and they severally further agree not to challenge or attach at any time hereafter in any form of action or proceeding whatsoever, the validity or *1019 enforceability of any of the provisions contained in said will and codicil which are to be executed and performed by the executor and trustee for their benefit and for the benefit of the other legatees, designated and undesignated, as in and by said instruments provided.” (Emphasis supplied.)
Mrs. Wiltbank and Mrs. Benson, under paragraphs Sixth and Seventh of said agreement, further “forever discharge the estate * * * and the Executor and Trustee * * * from all manner of action and actions * * * claims and demands in law or in equity ’ ’. Under said agreement the executor paid outright the sum of $65,000 each to Mrs. Wiltbank and Mrs. Benson. Thereafter, each was paid from time to time their annual payments provided by the terms of the will.
On November 12, 1938 the executor filed its petition for the judicial settlement of its account containing statements of fact relative to the charitable trust created by the will and the statutory provisions pertaining thereto. Mrs. Benson and Mrs. Wiltbank voluntarily appeared in said accounting proceeding and each executed and acknowledged an instrument as “legatee and annuitant under the will” consenting to a decree judicially settling the executor’s account. The decree settling said account, dated December 7, 1938, reflected the payments made to the legatees and trustee pursuant to the terms of the will, and forever discharged the executor “ as to the facts and matters embraced in said accounting.”
Thereafter, the trustee’s first intermediate account was settled by a decree dated October 24, 1945, which directed the trustee to retain the sum of $1,661,722.24 in trust in accordance with the provisions of testator’s will. Jurisdiction over all the parties interested in that proceeding had been obtained. The trustee stated in its petition therein that after payment of the annuities pursuant to the will, the remainder of the estate’s income and principal was to be applied by it for undesignated charities. Schedule F-2 of said account showed therein the payment of approximately $295,000 from income to many religious and charitable institutions. The decree discharged the trustee as to all ‘ ‘ matters embraced ’ ’ therein.
Clara M. Benson died in 1951 and letters testamentary under her will were issued on September 28, 1951 to her son, the original petitioner herein, and to James Maxwell Fassett. The trustee herein filed its petition for the judicial settlement of its second intermediate account on August 30, 1955. The said coexecutors under the will of Clara M. Benson, deceased, had theretofore executed an instrument dated January 2, 1952, wherein they acknowledged receipt of the sum of $493.15 paid *1020 to them by the trustee herein in full payment of all moneys due to Clara M. Benson, as deceased' annuitant, covering the period from the date of last payment on August 23, 1951 to the date of her death on September 6, 1951. The said coexecutors thereby released and discharged the executor and trustee of the within estate from ‘ ‘ all moneys due and owing ’ ’ to Clara M. Benson, by reason of the gift provided for her under paragraph ‘‘ fourth (a) ” of the testator’s will herein and consented to the entry of a decree settling the trustee’s account without further notice to either of them. Schedule F-2 of that account showed payment from income of the sum of approximately $438,000 to many religious and charitable institutions. The decree judicially settling the trustee’s account, dated October 27, 1955, discharged the trustees “as to the facts and matters embraced ’ ’ therein.
The contention of the petitioners and of the special guardian for Mrs. Wiltbank is that neither the agreement of December 12, 1936 nor the decrees settling the executor’s account in 1938, and the trustee’s first and second intermediate accounts in 1945 and 1955 respectively, specifically put in issue the validity of the trusts created by testator’s will for the court’s determination and are therefore not a bar to the instant- proceeding for a construction of the will. The petitioners further contend that as the annual payments to the six legatees named in the will were to be made out of income of the trust, the power of alienation was suspended for more than two lives in being in violation of the statutes against perpetuities. Moreover, it is argued that the gift of the remainder to the undesignated charities is not saved by section 12 of the Personal Property Law by reason of indefiniteness of purpose in that it was to take effect after the invalid suspension prohibited by statutes in effect at the time the will was made. It is also contended, that the absolute ownership of the trust fund could not vest in the trustee for the benefit of the charities until the termination of the six annuities by death or marriage of the recipients. It is further claimed by petitioners that the will merely authorizes the trustee to invade the corpus with respect to the charitable bequests, but that such power could not be exercised while the annuitants were alive; that .by the language of the will a distinction is made between the annuitants on the one hand and the charities on .the other, which indicates that testator did not intend an invasion of the corpus to be made to pay the annuities. Finally, it is urged that testator’s will limits payment of the annuities only “ out of income ” of the trust and that the testator’s use of the words *1021 ‘ ‘ hereby intending to make such annuities a first charge upon the trust fund ’ ’ are susceptible of at least three interpretations: (1) that the income was to be used first to pay the annuities ; (2) that the principal of the trust was to be kept intact so as to yield sufficient income to satisfy the annuities; and (3) that the principal could be invaded in the event of insufficient income to pay the annuities.
The trustee and the Attorney-General of the State of New York contend that the testator intended to create annuities payable out of income and principal with the remainder payable to religious and charitable corporations; that the trust corpus vested in the trustee as of testator’s death, subject to the charge of the annuities for the benefit of charities; and that the duration of the trust is not measured by the lives of the annuitants and is not invalid though the charitable beneficiaries are indefinite and uncertain (citing Personal Property Law, § 12; Real Property Law, § 113; Matter of Durbrow, 245 N. Y. 469, 477 and other cases).
The attorneys for one of the other annuitants, who is still receiving annual payments pursuant to the will, support the trustee’s position. They make the point that petitioners had full knowledge of the terms of the will when they executed the release upon the death of Clara M. Benson, more than 15 years ago; that the claim that the creation of the trust for charitable and religious purposes violated applicable law is, erroneous; and that the annuitants have been receiving the stipulated amounts provided under the will for more than 30 years, which petitioners now seek to attack as invalid. Thus, in effect, petitioners, whom it is contended have no standing to bring this proceeding, are attacking the right of the other annuitants to the payments they have received for over 30 years under the trust created by the will.
The intention of the testator must not be' drawn from a single word or phrase but from a sympathetic reading of the will as a whole and in the light of all the facts and circumstances under which it was framed (Collister v. Fassitt, 163 N. Y. 281) and when the testator’s intention is ascertained it controls unless it is contrary to statute or public policy (Matter of Buechner, 226 N. Y. 440, 444; Matter of Day,, 10 A D 2d 220, 222; Matter of Bisconti, 306 N. Y. 442; Matter of Evans, 234 N. Y. 42; Matter of Watson, 262 N. Y. 284; Matter of Upjohn, 304 N. Y. 366). The clear language used in a will must be given effect without a strained construction (Matter of Battell, 286 N. Y. 97). In the absence of a showing that the terminoloogy used is ambiguous, no extrinsic evidence is admissible to *1022 supply, contradict, enlarge or vary the written words (Brown v. Quintard, 177 N. Y. 75, 83; Matter of Tamargo, 220 N. Y. 225, 228; Matter of Wittner, 301 N. Y. 461, 465; Matter of Smith, 254 N.Y. 283, 289, 290).
The assets of the testator consisted principally of negotiable securities, which were subject to fluctuation in value from time to time. The testator had no way of being assured what the value of his assets would be at the time of his death or at any other time thereafter during the administration of the trust by the trustee. As a matter of fact, at the time that the executor filed its account in 1938, the appraised value of testator’s assets had decreased by $390,620.92, an amount approximately one third of the total estate. The testator owned a considerable amount of diverse securities and apparently was cognizant of their fluctuation in value.
The annuities provided for the six beneficiaries under his will aggregated $24,600 per annum. In addition, several general legacies were given under the will. The testator could not have ascertained whether his securities after his death would yield sufficient income to pay the annuities intended for Ms beneficiaries. It was therefore advisable to • make the payment of the “ annuities a first charge upon the Trust Fund.” To avoid any mistake as to his intention, the testator took pains to clearly state that he created “ legal and not equitable estates.” The quoted words are found under paragraph “fourth” of the will and.paragraph “first” of the codicil. Again, in providing for payment of the remainder to religious or charitable organizations, the testator was careful to state that the gift to the charities was “ subject to the charge of the annuities aforesaid.”
The six legatees, who were given annual legacies, were the testator’s prime concern. The language used by the testator in making such gifts clearly indicates that he did not restrict their payment to the income from the trust corpus. He intended that payment be made from both income and principal, when necessary. He created true annuities. The court so holds.
The lifetimes of annuitants are not considered as measuring lives as to the duration of a trust (Matter of Fischer, 307 N. Y. 149, 157; People’s Trust Co. v. Flynn, 188 N. Y. 385, 393). An annuity differs from an ordinary trust, whether the payments are to be made out of income and/or corpus, since the annuitant is deemed to have a vested right to payment of the stipulated amounts out of income as well as the corpus. The power of alienation is not suspended (Matter of Fischer, supra; People’s Trust Co. v. Flynn, supra; Hobson v. Hale, 95 N. Y. 588). The *1023 annuitant may assign, sell or transfer the annuity which may be computed and paid outright (Matter of Fowler, 263 App. Div. 255, affd. 288 N. Y. 697, rearg. den. 289 N. Y. 756). The annuitant is entitled to the .stipulated amount irrespective of the income derived from a particular corpus or fund (Matter of MacIntyre, 177 Misc. 833; Matter of Kohler, 96 Misc. 433, 441, mod. 193 App. Div. 8, revd. 231 N. Y. 353; People ex rel. Duncan v. Graves, 257 App. Div. 552, mod. 282 N. Y. 746; Matter of Ingraham, 158 Misc. 602; Matter of Anderson, 143 Misc. 250).
The fact that the remainder of the income or corpus is payable to unnamed religious or charitable corporations does not render such gift invalid by reason of indefiniteness of beneficiaries (Matter of Durbrow, 245 N. Y. 469, 477; Matter of MacDowell, 217 N. Y. 454; Matter of Groot, 173 App. Div. 436, affd. 226 N. Y. 576; Stewart v. Franchetti, 167 App. Div. 541; Matter of Frasch, 245 N. Y. 174; Butterworth v. Keeler, 219 N. Y. 446; Personal Property Law, § 12; Real Property Law, § 113). The decision in Matter of Shattuck (193 N. Y. 446) relied upon by the petitioners, is limited in scope to its particular facts and not controlling under the facts herein (Matter of Cunningham, 206 N. Y. 601 and cases supra). Nor is the gift to charities invalid, as the charitable trust is not measured by the lives of the annuitants (Matter of Smathers, 133 Misc. 812, 817; Matter of United States Trust Co., 86 Misxc. 603, affd. 168 App. Div. 903, affd. 216 N. Y. 639). Moreover, charitable trusts are to be liberally construed so as to give effect, if possible, to the testator’s benevolent intentions (Sherman v. Richmond Hose Co., 230 N. Y. 462, 471). The court determines that the trust created by testator’s will for religious and charitable purpose does not violate the statutes and constitutes a valid disposition of the residuary estate subject to the payment of the annuities to the beneficiaries.
In the absence of a showing that the terminology of the will is ambiguous, no extrinsic evidence is admissible to contradict, vary or enlarge the written words used by the testator (Brown v. Quintard, 177 N. Y. 75, supra; Matter of Tamargo, 220 N. Y. 225, supra). The special guardian’s application that a hearing be held to ascertain the facts surrounding the execution of the agreement dated December 12,1936 is denied.
Moreover, the coexecutors of Clara M. Benson are bound by the receipt and release executed by them on January 2, 1952, as are the conservator and special guardian for Maud Wilt-bank, who executed on August 16, 1955 a waiver of issuance of citation and consent to the settlement of the second intermediate account of the trustees (Pray v. Hegeman, 98 N. Y. 351, 358; *1024 Thorn v. De Breteuil, 179 1ST. Y. 64; Matter of Barrett, 286 App. Div. 289; Surrogate’s Ct. Act, §80).
The petitioners’ motion to strike out specified defenses of the trustee, for an order granting summary judgment and for an order to take depositions pursuant to article 31 of the CPLB, is denied. The motion of the respondent trustee to dismiss the petition is denied, and the testator’s will and codicil are construed as herein indicated.
The trustees shall continue to make annuity payments to the conservator’s and special guardian’s ward and to the other surviving annuitants named in the will.