■ In the Matter of the Estate of TESSIE JONES, Deceased. PIERPONT MORGAN LIBRARY, Appellant; WARING JONES et al., Respondents.— In a will construction proceeding, the appeal is from a decree of the Surrogate's Court, Orange County, dated November 1, 1973, which adjudged that a certain rare book collection constituted personal property of the testatrix which passed under article "Eleventh" of her will. Decree affirmed, with costs to all parties filing separate briefs payable out of the estate, upon the opinion of Surrogate Green. Christ, Brennan and Benjamin, JJ., concur; Cohalan, Acting P. J., dissents and votes to modify the decree in accordance with the following memorandum, in which Munder, J., concurs: The sole issue for construction is the matter of disposition of certain English and American first editions of books. By stipulation between the parties to this proceeding, dated August 6, 1973, it was provided, in part: "1. That the parties hereto waive any further testimony and consent for the Surrogate to render his immediate decision construing clauses of the Last Will and Testament of Tessie Jones, Deceased, based upon the Petition, the Answer and Memorandums of Law heretofore submitted and such extrinsic evidence as the Court feels is admissible on the issues." The facts reveal that the testatrix, Tessie Jones, a reclusive spinster possessed of considerable inherited wealth, executed three wills in her lifetime, in 1943, 1956, and 1960. She died in 1967. She had one close, dear friend, Harriet C. Weed, who, with her husband, had been a next-door neighbor. Shortly after her husband died, Mrs. Weed took up her permanent abode with Miss Jones, who devised the Jones residence to her in the probated will. Mrs. Weed died in 1971. She left a will dated September 21, 1970, which was duly admitted to probate. The Jones wills are alike in many respects, but each of the three instruments has one common and germane disposing article, a pertinent portion of which is identical in verbiage with the other two (art. Tenth in 1943, Twelfth in 1956 and Eleventh in 1960). The affected portion reads: "I give and bequeath all my personal property, consisting of furniture, carpets, curtains, china, linen, miscellaneous prints and pictures, antique chandeliers, Louis XV mantel, mirror and fire-back installed in drawing room in my residence, and miscellaneous bric-a-brac to said Harriet C. Weed, to be held and enjoyed by her during the period of her natural life". In each of the three wills also, Miss Jones gave "Blake's Songs of Innocence", the "Flaxman Autograph Letter to Blake" and her two original Blake drawings (water colors) to the Morgan Library in New York City, as a memorial to her father, Herschel V. Jones (see art. Fifth of the 1943 will, Seventh of the 1956 will and Sixth of the 1960 will). In the same article Fifth of the 1943 will; Miss Jones said: "FIFTH. I give and bequeath my English and American First Editions of books * * * to the Pierpont Morgan Library in New York City, as a memorial to my father,

Herschel V. Jones." Thus, in the 1943 will she telescoped the bequest of the rare books with the other items; in the later wills she made no mention of "my English and American First Editions of books". In each of the three Jones wills (art. Twelfth in 1943, Fifteenth in 1956 and Fourteenth in 1960), Mrs. Weed is named as the residuary devisee and legatee. Over the objection of appellant, the Pierpont Morgan Library, the two earlier wills were received in evidence. "Although resort to earlier and revoked wills is never permissible for the purpose of supplying, contradicting, enlarging or varying the written words of the last will (*Brown* v. *Quintard*, 177 N. Y. 75, 73), they may properly be considered for whatever aid they might offer in identifying the subject of the gift when the last will is ambiguous in that respect (4 Page, Wills [Bowe-Parker Rev.], pp. 274-275) " (*Matter of Constantine*, 36 Misc 2d 711). (See, also, *Matter of Frederick*, 41 Misc 2d 759, affd. 22 A D 2d 760.) It is undisputed that one attorney, Tristram Coffin, drew all three of the Jones wills, as well as the probated will of Mrs. Weed. He is now deceased. Bearing in mind that Coffin was the scrivener of all the wills, it is interesting to follow the pattern adopted with respect to the disposition of the rare books. Thus in article Thirty-Second of the Weed will it is provided: " I give and bequeath unto the Pierpont Morgan Library in memory of Miss Tessie Jones whatever of my books it may select." The only other books she had to give which had come to her from the Jones estate were children's books bequeathed to her in the 1956 and 1960 wills, which were apparently of relatively little value. In the 1943 will Miss Jones bequeathed those children's books to the New York Public Library, when at the same time she was leaving her rare books to the Morgan Library. Obviously Coffin would not have made provision for Mrs. Weed to leave the rare books to the Morgan Library unless he, at least, was satisfied that they were hers to give. In each of the three Jones wills (art. Thirteenth in 1943, Sixteenth in 1956 and Fifteenth in 1960) provision was made for disposition of the residuary estate if Mrs. Weed were to predecease Miss Jones. But, as we know, that did not happen. The Surrogate construed this conditional clause as indicating the intent of the testatrix to leave the rare books to her kin because of the disparity between the problematical bequests totaling $15,000 and the 1967 value of the rare books (approximately $80,000). The reasoning failed to take into account the possibility of a still further residue or remainder to go to the Minneapolis Institute of Arts for its maintenance fund, although this final provision is mentioned in the Surrogate's decision. He treated the thought of this further balance as minuscule, even though it may have been substantial. Although he made mention of the doctrine of *ejusdem generis* as applied to article Eleventh of the probated will, the Surrogate rejected its application in this instance. "The general rule is that where certain things are enumerated, and a more general description is coupled with the enumeration, the general expression covers only things which are ejusdem generis, that is, of a like kind, with those enumerated " (61 N. Y. Jur., Trusts, § 360; see, also, 65 N. Y. Jur., Workmen's Compensation, § 57). Further, as noted in New York Jurisprudence (vol. 64, Wills, § 572): "That rule is to the effect that when certain things named in a will are followed by a phrase which need not but might be construed to include other things, it will be confined to articles of the same general character as those enumerated." Certainly in article Eleventh of the will there is absolutely no mention of books, rare or otherwise; and by no manipulation of vocabulary can these items be read into the clause. Thus, any contrary interpretation does violence to the *ejusdem generis* rule (*Matter of Fabbri*, 2 N Y 2d 236; *Matter of Falvey*, 15 A D 2d 415, affd. 12 N Y 2d 759), particularly when, as here, there is no contrary

intention expressed. Accordingly, the decree should be modified by striking the last paragraph thereof and by substituting therefor the following: "That the antique, rare and original books belonging to the decedent and comprising her personal property known and designated as the Herschel V. Jones Rare Book Collection, were not intended to be, and are not, included within the provision of article 'Eleventh' of the Last Will and Testament of Tessie Jones, late of the County of Orange, and that all antique, rare and original books belonging to the decedent passed under article 'Fourteenth', the residuary clause of the Will."